### STATE of Maine

v.

### Rolf JETTINGHOFF.

Supreme Judicial Court of Maine.

Argued Jan. 16, 1984.

Decided July 27, 1984.

John R. Atwood, Dist. Atty., William R. Anderson, Asst. Dist. Atty. (orally), Belfast, for plaintiff.

Eaton, Glass, Marsano & Woodward, Francis C. Marsano (orally), Belfast, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

Rolf Jettinghoff appeals from a judgment of conviction entered by the Superior Court, Waldo County, after a jury found him guilty of burglary (Class C).[1] 17–A M.R.S.A. § 401 (1983). He argues that the jury's verdict was based on legally insufficient evidence and that the witness sequestration order issued by the presiding justice at the request of the prosecutor impermissibly infringed upon his right to effective assistance of counsel. We affirm the conviction.

I

Sometime between 1:00 p.m. and 4:00 p.m. on June 10, 1982, the Whittier House Antique Shop in Searsport was burglarized and several items of silver were taken. At approximately 4:00 p.m. on June 10, defendant and a friend, Billy Joe Noble, arrived on foot at the home of Ken Williamson in Searsport. Defendant and Noble had been drinking beer together at several locations in Searsport from about ten o'clock that morning. Noble carried a paper bag containing the silver that had been stolen from Whittier House. Noble placed the bag on the floor in the corner of Williamson's kitchen. After a short conversation with Williamson and another visitor, defendant and Noble left the house together and returned together within a half hour. This time Noble carried a brown knapsack into which he transferred the silver from the paper bag. Shortly after the transfer, defendant and Noble again left the Williamson residence together and headed toward Noble's house. Noble carried the silver-laden knapsack.[2] Defendant soon returned to Williamson's house with some beer and Noble returned shortly thereafter. Noble had placed the silver under a fruit basket in the garage behind his house.

Later that afternoon, two Searsport police officers retrieved the silver from Noble's garage after receiving a tip from one of the visitors at Williamson's house. On the following day, the investigating officers positively determined that the silver was taken from Whittier House. Their investigation revealed that the shop was forcibly entered and, besides the missing silver, a silver-plated tray had been moved from the southernmost front window of the shop to a counter. In addition, a small

---

1. Defendant was also charged with theft (Class C). 17–A M.R.S.A. § 353 (1983). He was acquitted on this charge.

2. Testimony revealed that defendant never touched the silver while at the Williamson house.

spherical foot was broken off the base of the tray. The manager of the shop found the silver foot on the floor just inside the shop's front entrance. Although Noble testified that he acted alone in the burglary and theft, defendant's left thumbprint was on the displaced tray.

## II.

■ We must affirm defendant's conviction unless no trier of fact rationally could find proof of guilt beyond a reasonable doubt. *State v. Flick*, 425 A.2d 167, 169 (Me.1981). Any doubts as to the accuracy of the jury's determination of factual questions must be resolved in favor of the verdict. *State v. Theriault*, 425 A.2d 986, 988 (Me.1981). To have convicted defendant of burglary, the jury had to find that he entered Whittier House, knowing that he was not licensed or privileged to do so, with the intent to commit a crime therein. The evidence produced by the State established beyond a reasonable doubt that a burglary and theft was committed at the antique shop sometime during the early afternoon of June 10, 1982. Defendant contends, however, that the evidence did not substantiate his involvement in the burglary and advances two arguments in support of his contention. Both arguments lack merit.

Defendant's first argument is based on his claim that because the State attempted but was unable to exclude beyond a reasonable doubt every other reasonable hypothesis except that defendant touched the silver-plated tray in the antique shop at the time of the crime, he cannot be found guilty of the burglary. This argument lacks merit. There is a single standard of proof for all criminal convictions, and the test is the same in a case of either circumstantial or direct evidence: "whether from all the evidence and from such reasonable inferences as may properly be drawn therefrom the guilt of the defendant has been proved beyond a reasonable doubt." *State v. LeClair*, 425 A.2d 182, 184 (Me.1981), quoting, *State v. Jackson*, 331 A.2d 361, 365 (Me.1975).

When the state produces circumstantial evidence tending to support an inference of the defendant's guilt, the jury must also consider, of course, any explanation for the evidence consistent with the defendant's innocence. The jury's guilty verdict must be based not on a determination that there exists no alternative explanation, but that, after assessing the credibility of such explanations, they raise no reasonable doubts as to the defendant's guilt.

*LeClair*, 425 A.2d at 184. Here the jury was not compelled to think "reasonable" the hypothesis that defendant left his fingerprint on the silver-plated tray at some time other than the afternoon of the burglary.

Defendant's second argument is based on his view that, because the justice never instructed the jury on accomplice liability or on the inferences it could draw from the evidence presented, defendant's burglary conviction cannot be sustained on the present record.[3] The issue here is not the failure of the trial court to give a particular instruction, but whether the evidence was sufficient to sustain the jury's verdict of guilty of burglary.

The evidence tending reasonably to prove that defendant was involved in the burglary included his fingerprint on the tray that was moved and broken sometime during the perpetration of the crime and his continued presence, both before and after the burglary and theft, with the self-admitted burglar and thief while he transported the fruits of the crime. Circumstantial evidence of defendant's fingerprint on the tray that had been moved, coupled with defendant's proximity to the thief both before and after the crime and to the stolen items after they were removed from the

---

3. We note that defense counsel, as part of his trial strategy, never requested jury instructions on accomplice liability, 17–A M.R.S.A. § 57(3)(A) (1983), or on the permissive inferences of guilt of burglary and theft the jury could draw from proof of exclusive possession of recently stolen property. 17–A M.R.S.A. § 361(2) (1983).

shop rationally supports a jury finding that defendant entered the premises illegally with the intent to commit a crime therein. We believe the evidence supports the jury's finding of guilt on the burglary charge. In so finding, we are not required to rationalize the guilty verdict on the burglary charge and the acquittal on the theft charge.

### III.

Prior to the commencement of trial, defense counsel moved for a witness sequestration order. The presiding justice ordered all witnesses sequestered and also directed both counsel for the State and defendant not to discuss prior testimony with prospective witnesses during the course of the trial. The following colloquy between defense counsel and the court ensued:

DEFENSE COUNSEL: Can counsel discuss the testimony with two witnesses at the same time?

THE COURT: If they have not testified, I don't see why not. The problem is, counsel simply cannot discuss what some other witness has already said, and no one else can discuss it with them either

DEFENSE COUNSEL: Counsel cannot—I cannot talk with my witnesses about what has been said in order to find out what the evidence is going to be and how we can rebut it with our evidence?

THE COURT: You can't disclose what somebody else testified to. What's the point of sequestration? Right? You're the one that moved for sequestration.

The idea of sequestration is so one witness does not know what another witness has said. It sort of moots the point of sequestration if one witness is told what another witness said.

Defense counsel then withdrew his motion for sequestration. The prosecutor, however, advised the court that the State favored sequestration. The presiding justice then ordered the witnesses sequestered and the following colloquy ensued:

DEFENSE COUNSEL: I would like to indicate, your Honor, that I'm representing an individual who is young; I have just defense witnesses, each of whom are young, and it's very difficult to work in defense of a case like this when I don't have an opportunity to say what are the facts with respect to this. And I don't want to misrepresent to the Court that I'm not going to be doing that against what somebody has testified, Your Honor, and it's very difficult to follow the thrust of the Court's instructions. I think I should be allowed as the Defendant's attorney to discuss evidence and to rebut evidence, and that's about the only way it can be done, and my obligation to this Defendant is to defend him against evidence that is being brought forth at trial.

Already this morning I've indicated to the Court that there was a statement furnished me, and now the District Attorney has agreed to something else of the facts that this witness will testify to. Those are critically important things for me to be able to discuss with my witness, and I respectfully suggest that I be allowed to do that.

THE COURT: Okay, Well, normal sequestration order prevents a witness, and these things are granted relatively regularly, prevents anyone who has been in the courtroom, or anyone else actually, from advising a witness what some other witness has said, and that's the idea of sequestration.

You can ask the witness what he's going to say obviously. So, the idea of sequestration is so that witnesses can't be aware of what previous witnesses have said and adjust their testimony accordingly. And that's the way sequestration works, and the State has requested sequestration, and I've granted sequestration for witnesses for both sides.

Defendant claims that the justice's refusal to allow his attorney to discuss the testimony of the State's witnesses with defense witnesses prior to their taking the stand

denied him the effective assistance of counsel.

In Maine, exclusion of witnesses from the courtroom is left to the sound discretion of the trial judge. M.R.Evid. 615.[4] *See* Field & Murray, *Maine Evidence* § 615.1 at 166–67 (1976). This Court is evenly divided on whether the judge committed error in ordering defense counsel not to discuss the in-court testimony of witnesses with defendant's prospective witnesses during the course of the trial.

Accordingly, the entry must be:

Judgment affirmed.

All concurring.

---

**4.** Rule 615 provides:

EXCLUSION OF WITNESSES

At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.