STATE of Maine

v.

Daniel J. MITCHELL.

Supreme Judicial Court of Maine.

Submitted on Briefs June 18, 1991.
Decided July 26, 1991.

R. Christopher Almy, Dist. Atty., Bangor, for the State.

Timothy C. Woodcock, Weatherbee, Woodcock, Burlock & Woodcock, Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

The defendant, Daniel J. Mitchell, appeals from the judgments of the Superior Court (Penobscot County, *Smith, J.*). finding him guilty on one count of burglary, 17–A M.R.S.A. § 401 (1983), and one count of theft, 17–A M.R.S.A. § 353 (1983). Mitchell contends that the court erroneously accepted a waiver of his right to a jury trial, the State produced insufficient evidence to support his conviction on the burglary count, and he received ineffective assistance of counsel at his trial. Finding no error in the record, we affirm the judgments.

Shortly after midnight on the morning of December 23, 1988, Sandra Hover placed her handbag, containing the keys to her blue 1988 Mercury Tracer and $300 in cash, on the kitchen table in her Bangor residence and retired for the night. At 1:00 a.m., Mitchell, an American Indian, was seen by a witness leaving the parking lot of a hotel located near the Hover residence. At 4:30 a.m., a truck driver travelling along Route 6 east of Lincoln picked up an American Indian male wearing jeans, who told the driver his car had broken down up ahead on the highway. After travelling along Route 6 about two miles, they passed a small blue compact car with its headlights illuminated. The passenger told the truck driver that he need not stop to turn off the headlights because the tow truck could recharge the battery when it picked up his car. The truck driver dropped his passenger off on Main Street in Lincoln, where he said he was renting a motel room. The truck driver was unable to identify Mitchell as his passenger.

At 5:30 a.m., a state police officer received a report of an abandoned car with illuminated headlights east of Lincoln on Route 6. The officer located a blue 1988 Mercury Tracer in the reported location and learned that the car was registered to

Sandra Hover. At 6:00 a.m., an American Indian male wearing jeans entered the office of a Lincoln motel, located on Main Street, and paid for a room in cash. The motel manager, who at trial identified the man as Mitchell, noticed that Mitchell did not have a car. When questioned about this fact, Mitchell told the manager that he had "totalled" his car and then pointed in the general direction of Route 6.

At 6:30 a.m., Sandra Hover and her husband William reported to the Bangor police that Sandra's handbag and car were stolen and the contents of the glove compartment of William's truck had been disturbed. Later that morning, the state police officer learned that the abandoned car on Route 6 had been stolen, interviewed the truck driver and Lincoln motel manager, and obtained a warrant to search the motel room rented by Mitchell. The officer executed the warrant that day, arrested Mitchell, and conducted a search of the motel room. The officer retrieved a tire pressure gauge from the toilet, which William Hover later identified as one missing from the glove compartment of his truck. Sandra Hover's handbag was later found thrown over an embankment in Bangor, but her car keys and the $300 cash were never recovered.

Mitchell was indicted on one count of burglary, 17–A M.R.S.A. § 401 (1983), and one count of theft, 17–A M.R.S.A. § 353 (1983). Mitchell filed a written waiver of a jury trial, pursuant to M.R.Crim.P. 23(a). At a hearing, the court informed Mitchell of the consequences of the waiver, but when Mitchell told the court that his lawyer had not explained those rights to him, the court rejected the waiver. Defense counsel asked for a recess, and five minutes later Mitchell resubmitted the waiver of his right to a jury trial to the court. After the court repeated the explanation of the consequences of a waiver, Mitchell said he understood the rights he was waiving. The court approved the waiver, and the case proceeded to trial without a jury. After the State presented its case, the defense rested without presenting any witnesses on Mitchell's behalf. Mitchell was found guilty on both counts and appeals.

■ Mitchell challenges the court's approval of Mitchell's written waiver of his right to a jury trial on the ground that the court's explanation of his constitutional right was inadequate and, accordingly, that his waiver was neither voluntary nor intelligent. We review a waiver of the right to a jury trial on a direct appeal only if the record discloses an unquestioned violation of appellant's constitutional right. *See State v. Boilard,* 359 A.2d 65, 68 (Me.1976) (violations not apparent from record properly raised only in post-conviction proceedings). The waiver of the constitutional right to a jury trial, *see* Me. Const. art. I, § 6, is not effective if it is not voluntary and intelligent. *See State v. Rowell,* 468 A.2d 1005, 1007 (Me.1983). We have previously stated that in deciding whether to accept a written waiver of the right to a jury trial the court should advise the defendant of his right, explain the consequences of a waiver of that right, and conduct any further inquiries it deems necessary to ensure that the waiver is voluntary and intelligent. *See State v. Boilard,* 359 A.2d at 68 n. 4; *see also* M.R.Crim.P. 23(a).

■ Mitchell contends that, given his initial difficulty in comprehending the nature of his constitutional right, the court could not have reasonably concluded that Mitchell's five-minute consultation with his lawyer would clarify the issues in Mitchell's mind. After Mitchell's consultations with his lawyer, however, the court carefully reiterated all of its previous explanations regarding the essential characteristics of Mitchell's right to a jury trial and the consequences of a waiver of that right. Mitchell several times responded that he understood the court's explanations. The record before us discloses no violation of Mitchell's right to a jury trial, let alone an unquestioned violation.

Although Mitchell does not challenge his conviction on the count alleging his theft of the Hover car and other property, he contends the evidence was insufficient to support his conviction for burglary.[1] We disagree.

■ We review the record to determine whether, based on the evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *See State v. Barry,* 495 A.2d 825, 826 (Me.1985). To warrant a conviction for burglary the State must establish four elements: (1) an entry (2) of a structure (3) with the knowledge that the entry is not licensed, and (4) with the intent to commit a robbery therein. *See State v. Thibeault,* 402 A.2d 445, 448 (Me.1979). The State can prove the defendant's entry by direct evidence, including testimony of eyewitnesses who observed the defendant entering the structure, or physical evidence that proves the defendant was actually inside the structure. *See, e.g., State v. Collins,* 479 A.2d 344, 346–47 (Me. 1984) (pry marks on doors matching tool found in defendant's possession); *State v. Jettinghoff,* 478 A.2d 1125, 1127 (Me.1984) (fingerprint of defendant found on object broken during commission of crime). The absence of direct evidence, however, does not preclude a conviction:

There is a single standard of proof for all criminal convictions, and the test is the same in a case of either circumstantial or direct evidence.... When the state produces circumstantial evidence tending to support an inference of the defendant's guilt, the jury must also consider, of course, any explanation for the evidence consistent with the defendant's innocence. The jury's guilty verdict must be based not on a determination that there exists no alternative explanation, but that, after assessing the credibility of such explanations, they raise no reasonable doubts as to the defendant's guilt.

*State v. LeClair,* 425 A.2d 182, 184 (Me. 1981). The evidence in the present case discloses that the handbag containing money and the keys to Sandra Hover's car, which the State proved was stolen by Mitchell, was inside the Hover residence prior to the theft of the car, and that

---

1. Mitchell proposes on appeal that it was possible for him to start Sandra Hover's car without the use of keys or without the use of the particular set of keys that were left in Hover's handbag.

William Hover's tire gauge was present in Mitchell's motel room. From this evidence the factfinder could rationally infer that Mitchell did enter the Hover residence on the morning of December 23, 1988, did take the missing handbag containing the keys and $300 in cash, and did use the keys to start the car.

■ Finally, Mitchell contends that he received ineffective assistance of counsel at his trial. When a claim of ineffective assistance of counsel is made on direct appeal, we examine the record to determine if it reflects beyond the possibility of rational disagreement that the defendant was inadequately represented by counsel, and absent such a showing, we leave the defendant to seek relief through post-conviction proceedings. *See State v. Cyran*, 586 A.2d 1238, 1240 (Me.1991). Even in those cases when we review such an issue on direct appeal, the judgment must stand unless the defendant demonstrates a reasonable probability that "but for counsel's unprofessional errors the result of the proceedings would have been different." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1985)). The record in the present case does not reflect beyond the possibility of rational disagreement that Mitchell was inadequately represented by counsel nor does it show unprofessional errors of Mitchell's counsel that would have changed the outcome of the trial.

The entry is:

Judgments affirmed.

All concurring.