2002 ME 60

**STATE of Maine**

v.

**Gary F. ELWELL.**

Supreme Judicial Court of Maine.

Argued: Feb. 6, 2002.

Decided: April 10, 2002.

---

David W. Crook, District Attorney, Alan P. Kelley, Deputy Dist. Atty. (orally), Augusta, for State.

Matthew P. Mastrogiacomo (orally), Elliott L. Epstein, Isaacson & Raymond, Lewiston, for defendant.

Panel: CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Gary Elwell appeals from a judgment of conviction entered after a jury trial and verdict of guilty in the Superior Court (Kennebec County, *Mills, C.J.*) on assault with a firearm (Class C), 17-A M.R.S.A. § 207(1) (1983); criminal threatening with a firearm (Class C), *id.* § 209(1); and reckless conduct with a firearm (Class C), *id.* § 211(1). Elwell contends that the court's exclusion of the audiotape recording of the victim's 911 telephone call was error. Elwell further challenges the Superior Court's (*Marden, J.*) denial of his motion to suppress items seized in the execution of a search warrant. We affirm the denial of the suppression motion, but we vacate the judgment on the ground that the exclusion of the 911 tape was prejudicial error. We do not reach Elwell's claim that the trial court erred by allowing two jurors who had not yet finished deliberating in another case to serve on Elwell's jury without permitting voir dire of those jurors.

## I. FACTS

[¶ 2] The basic facts as presented by the State are the following. Gary Elwell and Robin Miller were involved in a relationship for over twenty years. They never married, but lived together for substantial periods and had three daughters. During the summer of 1998, the couple's relationship deteriorated, and Miller moved out of Elwell's house, with the three girls, into an apartment across the street.

[¶ 3] On January 16, 1999, Elwell asked Miller to come to his house to talk. When Miller entered Elwell's house, she did not see him and so she called aloud. Elwell answered, and as Miller walked around a corner, he grabbed her arm and pulled out a gun. Miller struggled for the gun, and, during the struggle, she fell to the floor. Elwell stuck the gun in her face and told her that they were going to have sex for the last time. Elwell placed the barrel of the gun within an inch or two of Miller's face and attempted to make her suck it. Miller testified that she believed that Elwell was going to kill her. She pushed the gun away and told Elwell that she could not have sex with the gun around. Elwell wiped the barrel of the gun with a white cloth, and placed the gun and cloth on the dining room table. The two went upstairs where Miller's participation in sexual intercourse consisted of "playing dead" until Elwell was finished. Elwell subsequently allowed Miller to dress and leave the house.

[¶ 4] At home Miller thought over her options and tried to reach the rape crisis center. When she was unable to do so, she called 911. Thereafter, Miller met with Officer Niedner at the Hallowell Police Department.

[¶ 5] The dispatcher called Elwell and asked him to meet two officers in front of his house. The officers had him lie down on the ground while they searched him for weapons, but found none. They questioned Elwell, and they and Elwell went into Elwell's house where they saw a gun with ammunition and a white cloth. The police later obtained and executed a search warrant and seized the gun, ammunition, and the white cloth.

[¶ 6] Elwell was found guilty of assault, criminal threatening, and reckless conduct, all with the use of a firearm. He was sentenced to five years in prison, with all but two and one-half years suspended, and four years probation.

## II. EXCLUSION OF 911 AUDIOTAPE

[¶ 7] The position of the defense was that Miller had invented the January 16 incident as a means of removing Elwell from her life. Thus, it was crucial for the defense to impeach Miller's credibility. Officer Niedner of the Hallowell Police Department testified that he met with Miller during the evening of January 16 after her 911 call. During his cross-examination, he testified that he obtained the 911 tape shortly after the incident and that he listened to the tape.

[¶ 8] Elwell requested that the court allow the jury to hear the audiotape of Miller's 911 call. The State objected on hearsay grounds, but Elwell explained that the tape was not being offered for the truth of the matter asserted; instead, Elwell was offering it to demonstrate to the jury Miller's flat vocal inflection and calm tone of voice during the call. The State then objected on the ground of relevance stating that Officer Niedner was not an expert and would not be able to opine whether Miller's tone of voice was inconsistent with the facts she reported. Elwell responded that he would not be asking the officer any further questions. The officer had already testified, without objection, that the manner in which a person relates an incident can be as important as what is said. Finally, the State suggested that the tape would confuse the jury and should be excluded under M.R. Evid. 403. The court declined to permit Elwell to play the tape.

[¶ 9] None of the objections raised by the State is a valid basis for exclusion of the 911 tape. The hearsay objection was not pertinent because the defendant was not offering the tape for the truth asserted in any of the statements on the tape. Elwell expressly stated that he was offering it for the jury to hear Miller's vocal inflection. The tape did not meet the definition of hearsay, and, therefore, the hearsay objection missed the mark. M.R. Evid. 801(c).

[¶ 10] The second objection was lack of relevance because the officer was not an expert on tone of voice. We have never required an expert to explain to a jury what a witness's lack of emotion may signify. The evaluation of a witness's demeanor, including the witness's out-of-court statement, is particularly within the province of the factfinder. A jury is competent to evaluate the demeanor of a witness without an expert to assist in the evaluation. *See State v. Rizzo*, 1997 ME 215, ¶ 19, 704 A.2d 339, 344 (noting probative value of spontaneity of statements on tape of 911 call). The tape was not inadmissible on the basis that it would be irrelevant without an expert.

[¶ 11] The State's final objection was that the evidence might confuse the jury and was inadmissible under M.R. Evid. 403. Apparently, the State meant that the tape would confuse the jurors without expert testimony, but as stated above, expert testimony was not required for the jury to evaluate whether Miller's credibility was impeached or enhanced by her tone of voice on the 911 tape. The possibility that the jury would be confused without expert testimony was not a viable basis for exclusion of the tape.

[¶ 12] The State offers two additional grounds for the exclusion of the tape in its argument on appeal. The State claims that Elwell did not make an appropriate offer of the tape in that he did not

state specifically what Miller said on the tape or how she said it. We disagree that the offer of proof was insufficient. The court had already heard from Miller and Officer Niedner that Miller called the 911 number to report the assault. Elwell offered the tape and stated that the purpose of admitting the tape in evidence was to let the jury hear Miller's tone of voice as she made the call. The substance of the evidence was apparent from the context of the offer and the testimony that had been given about the tape. *See* M.R. Evid. 103(a)(2).

[¶ 13] Lastly, the State argues that Elwell did not establish the authenticity of the tape. The State did not suggest at trial or on appeal that the tape was other than what Elwell purported it to be. Officer Niedner testified that he obtained the 911 tape shortly after it was made. The inference from his testimony was that he had the tape until he turned it over to the prosecutor's office two days before trial. Niedner also conversed with Miller on the evening that she had made the 911 call, and Niedner listened to the tape. The burden of authentication is to show that the evidence is what it purports to be. M.R. Evid. 901(a). That is, in this case Elwell had to show that the offered tape was a recording of the 911 phone call that Miller made. In the absence of any suggestion that the tape was not authentic and not what it purported to be and where (1) Miller testified that she made the call; (2) the officer who was familiar with her voice had listened to the tape; and (3) it can be inferred from the officer's testimony that the tape was in the custody of the police and the prosecutor, Elwell satisfied the burden of authentication.

[¶ 14] We conclude that it was an abuse of discretion to exclude the tape. The State has not argued that the exclusion of the tape was harmless error. In-

deed, where the verdict of guilty depended upon the jury's finding Miller credible, the exclusion of admissible evidence that had a tendency to undermine her credibility is prejudicial. We cannot conclude that it is highly probable that the exclusion did not affect the jury's verdict. *See State v. Kalex*, 2002 ME 26, ¶ 22, 789 A.2d 1286, 1292. Because the 911 tape should not have been excluded, we vacate the conviction.

## III. MOTION TO SUPPRESS

[¶ 15] Elwell has also challenged the denial of his motion to suppress evidence obtained from the execution of a search warrant. Although we vacate the judgment, we reach this issue because it is determinative of whether the seized evidence can be offered at a retrial. Elwell actually filed three motions to suppress. One motion sought to suppress Elwell's statements to the police on the ground that the police obtained the statements in violation of Elwell's *Miranda* rights. The State conceded that Elwell's statements were obtained in violation of *Miranda*, and the Superior Court granted that motion.

[¶ 16] The other two motions sought to suppress the gun and other objects seized at Elwell's house on the ground that the affidavits supporting the request for the warrants contained Elwell's statements that were obtained in violation of *Miranda*. The court denied these two motions, finding that without the use of Elwell's statements, the affidavits contained sufficient information for a determination that there was probable cause to believe that the gun, cloth, and other items described in the warrants would be found in Elwell's home. Elwell only appeals the denial of the motion seeking to suppress the warrant that was issued and executed on January 17.

[¶ 17] The affidavit in support of the January 17 warrant recited in detail, in several paragraphs, Miller's report of what had taken place between herself and Elwell at Elwell's residence on January 16. It described Elwell's conversation with Miller; the assault downstairs; the sexual assault upstairs; the gun and the manner that Elwell used it; and Elwell's act in covering the gun with the white cloth. Elwell argues that Miller's description contained in the affidavit consisted of nothing more than unsubstantiated accusations which cannot form the basis of probable cause. Elwell is incorrect. An affidavit containing a detailed description of the commission of a crime as reported by the victim can be sufficient for a magistrate to find that probable cause exists to believe that the weapon used in the crime will be where the victim has indicated. The Superior Court did not err in denying the motion to suppress the gun and other objects obtained as the result of the execution of the search warrant on January 17, 1999.

The entry is:

Judgment vacated.