2008  ME  119

**STATE of Maine**

v.

**Nicholas WEBSTER.**

Supreme Judicial Court of Maine.

Argued:  April 10, 2008.
Decided:  July 17, 2008.

Verne E. Paradie, Jr., Esq. (orally), Trafton & Matzen, LLP, Auburn, ME, for Nicholas Webster.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

SILVER, J.

[¶ 1] Nicholas Webster appeals from a judgment of the Superior Court (Cumberland County, *Gorman, J.*) of conviction of attempted gross sexual assault (Class B), 17-A M.R.S. § 253(1)(B) (2007), 17-A M.R.S. § 152(1)(B) (2007), and solicitation of a child by computer (Class D), 17-A M.R.S. § 259(1-A) (2007), upon a jury verdict finding him guilty. On appeal, Webster argues that the statutory provisions of criminal attempt and gross sexual assault are inconsistent and in conflict and therefore can not be harmonized in a manner consistent with the rules of statutory construction that would establish the crime of attempted gross sexual assault. He further argues that (1) the court erred in refusing to grant his motion for acquittal on the basis of entrapment and (2) the court erred in allowing into evidence transcripts of instant messaging. We affirm.

## I. FACTS AND PROCEDURE

[¶ 2] In January 2007, four separate on-line conversations took place in real time between "brooke_z93" and "makavelli_of_Lewiston." These were names used by two different people as they communicated with others through various means on the Internet.[1] Brooke_z93 was the on-line profile name for Kimberly Bringard, who is a volunteer "contributor" for Perverted Justice. Perverted Justice is an organization that works to catch "predators" on the Internet. Bringard is an adult female who, like other Perverted Justice contributors, creates fictitious on-line profiles of young teenagers. She then waits for people to contact her on-line. Perverted Justice has a working relationship with the South Portland Police Department.

[¶ 3] Bringard posted her brooke_z93 profile in January 2007 with the understanding that she would be working with the South Portland Police Department. On January 10, 2007, makavelli_of_Lewiston contacted brooke_z93. During a January 14, 2007 conversation, makavelli_of_Lewiston sent brooke_z93 a picture, in which Bringard could see makavelli_of_Lewiston's face. At trial, Bringard

---

1. These names are indicative of the nicknames people give to themselves for use in any number of on-line activities, such as e-mailing, blogging, conversing in chat rooms, or posting comments to a web site.

identified Webster in the courtroom as the man she saw talking to her on-line.

[¶ 4] Perverted Justice maintains a data center into which chat logs such as those between Bringard and Webster are uploaded daily. Perverted Justice has three proxy servers in three ˙ different states to ensure that there is no tampering with the chat logs. During the course of Bringard and Webster's on-line conversation, the talk turned sexual, and Bringard falsely told Webster that she was thirteen years old. Webster told her that he was twenty-seven years old. He apparently believed that Bringard was thirteen years old.

[¶ 5] Bringard contacted Detective Frank Stepnick of the South Portland Police Department and told him that she had someone interested in her profile. She provided Detective Stepnick with the login identification and password to Perverted Justice's data center so that he could check the chat logs. She followed Stepnick's lead on how to proceed in her under-cover role. Stepnick would read the chat logs and Bringard could not do anything without his knowledge or approval. At trial, a transcript of the on-line conversations between Bringard and Webster was introduced in evidence.

[¶ 6] During Bringard and Webster's first on-line conversation, on January 10, 2007, Webster introduced himself and Bringard introduced herself as her on-line persona. Webster asked Bringard how old she was, and Bringard responded, "13." Webster stated that he was "27," and asked "this dont bother u? ?" They then discussed what they like to do for fun and what they were planning to do that eve-ning. Bringard stated that she hated the kids at her school, and had a boyfriend in Michigan, from where, she said, she had just moved. She also stated that she did not miss her boyfriend because she tended to like different guys and did not want to be tied to only one.

[¶ 7] Webster then asked Bringard if she wanted to "hang out." When Brin-gard said that she did want to meet, Web-ster expressed concern that she would try to "get [him] in trouble." He said he would meet Bringard if she convinced him that she was not trying to set him up. To allay his concerns, Bringard apparently placed a phone call to Webster. The caller was actually a Perverted Justice "phone verifier," who was used to make phone calls at the request of contributors and establish the sound of a thirteen-year-old voice in order to better establish the iden-tity of the on-line profile. Webster then sent Bringard a picture of his "booty" on-line. Webster would have already seen a picture of who he believed to be brooke_z93, which was of a young girl and posted on the Yahoo member directory assigned to brooke_z93.

[¶ 8] A second on-line conversation took place on January 11, 2007. During this conversation, Bringard asked Webster what he wanted to do when they met. Webster responded that he wanted to have sex with Bringard. He asked Bringard if she would have sex with him, and she told him that she probably would.

[¶ 9] The next on-line conversation took place on January 13, 2007. Webster and Bringard spoke more about having sex, and Webster said that he hoped he would not go to jail as a result. The talk continued to be sexual, with Webster tell-ing Bringard he could teach her about guys so that she could have any man she wanted when she got older. After a break in conversation, Webster and Bringard dis-cussed where they would meet. Webster mentioned that he could rent a place in Portland near the water. They then en-gaged in sexual discussion, with Webster boasting about the size of his penis, his

sexual prowess, and what he would do with Bringard. He also suggested that Bringard could perform oral sex on him.

[¶ 10] During their next conversation on January 14, 2007, Webster sent a picture of himself to Bringard without his shirt on. On January 15, 2007, they had another on-line conversation and made arrangements to meet that day. Webster suggested meeting at what he thought was Bringard's home. They set a meeting place and time, and just before Webster left his home to meet Bringard, Bringard asked him what kind of car he would be in, which he described to her. This is the end of the on-line conversations. On that date the phone verifier made another phone call to Webster and spoke with him as he was driving to the meeting place.

[¶ 11] When Webster arrived at the meeting place, Detective Stepnick was there, recognized Webster, and arrested him. At the South Portland Police Department, Webster told Stepnick that he did not have a thing for younger girls and that he was not inclined to engage in such behavior. He said that brooke_z93 had been provoking him and that he eventually succumbed to her repeated solicitation. He also had condoms with him when he was arrested. Webster also admitted that his Yahoo Internet account was makavelli_of_Lewiston.

[¶ 12] A jury trial was held on July 10 and 11, 2007, after which the jury found Webster guilty on both counts. This appeal followed.

## II. DISCUSSION

[¶ 13] We first dispense with Webster's argument that the statutory provisions of criminal attempt and gross sexual assault are inconsistent and conflict such that they

cannot be harmonized in a manner consistent with the rules of statutory construction that would establish the crime of attempted gross sexual assault.

[¶ 14] We review issues of statutory interpretation de novo, *State v. Harris*, 1999 ME 80, ¶ 3, 730 A.2d 1249, 1251, and our primary purpose is to give effect to the intent of the Legislature. *Me. Ass'n of Health Plans v. Superintendent of Ins.*, 2007 ME 69, ¶ 34, 923 A.2d 918, 928. When two statutes appear to be inconsistent, as Webster alleges here, we attempt to harmonize them if at all possible. *Yeadon Fabric Domes, Inc. v. Me. Sports Complex, LLC*, 2006 ME 85, ¶ 20, 901 A.2d 200, 206. We presume that the Legislature did not intend an absurd result, and we will construe legislation to avoid "inconsistency, contradiction, and illogicality." *State v. Rand*, 430 A.2d 808, 817 (Me. 1981).

[¶ 15] In this case, 17–A M.R.S. § 253(1)(B) and 17–A M.R.S. § 152(1)(B), which together form the crime of attempted gross sexual assault, are clearly intended to make it a criminal offense to attempt to engage in a sexual act with another person, not one's spouse, who has not yet attained the age of fourteen years. These two statutes, considered together, are not "reasonably susceptible of different interpretations." *Me. Ass'n of Health Plans*, 2007 ME 69, ¶ 35, 923 A.2d at 928. It is irrelevant that Bringard was not actually under the age of fourteen years. It is relevant, however, that Webster believed her to be under that age; when he believed her to be thirteen years old and attempted to engage in a sexual act with her, he was guilty of attempted gross sexual assault.[2]

[¶ 16] To be guilty of attempted gross sexual assault, Webster must have

---

**2.** In prior cases, we have discussed mistake of fact as an affirmative defense to some crimes.

*State v. Collin*, 1999 ME 187, ¶ 12, 741 A.2d 1074, 1078; *State v. Poole*, 568 A.2d 830, 831

taken "a substantial step toward the commission of the underlying substantive crime." *State v. Long*, 577 A.2d 765, 765 (Me.1990). The Legislature has established that "[a] substantial step is any conduct that goes beyond mere preparation and is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime." 17–A M.R.S. § 152. This definition is reflected in Alexander, *Maine Jury Instruction Manual*, §§ 6–26B at 6–39, 6–34 at 6–48 (4th ed. 2008).

[¶ 17] In this case, Webster clearly took a substantial step toward gross sexual assault. He agreed with Bringard on a time and place to meet, he secured a ride to the meeting place, he obtained condoms and had them in his possession when arrested at the meeting place and time.

██ [¶ 18] We also conclude that the court did not err when it refused to grant Webster's motion for acquittal on the basis of entrapment. The evidence at trial generated the issue of Webster's entrapment, and the court properly instructed the jury on entrapment. Entrapment then became a question of fact for the jury to determine. *State v. Lee*, 583 A.2d 212, 213 (Me.1990). Thus, Webster's claim that the court erred as a matter of law in not granting his motion to acquit on the grounds of entrapment is inapposite. The proper inquiry is whether evidence introduced at trial of the absence of entrapment viewed in the light most favorable to the State was sufficient to support the jury's verdict, based on that evidence. *Lee*, 583 A.2d at 214. We will vacate the jury's verdict "only if the jury could not rational-

ly have reached its conclusion on the basis of the evidence before it." *Id.*

[¶ 19] Given the on-line chats between Webster and Bringard, we find that there was sufficient evidence for the jury to conclude that government action did not induce Webster to commit the crimes of which he was convicted and/or that Webster was predisposed to commit the crimes. *See State v. Farnsworth*, 447 A.2d 1216, 1218 (Me.1982).

██ [¶ 20] Lastly, Webster contends that the court erred in allowing in evidence transcripts of the on-line chats between Webster and Bringard. We review a court's rulings on admissibility of evidence for clear error or abuse of discretion. *Eaton v. Wells*, 2000 ME 176, ¶ 44, 760 A.2d 232, 247. M.R. Evid. 901(b)(1) provides that the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" is an adequate method of authentication. Bringard testified that the chat logs sought to be introduced in evidence were "[a]bsolutely" a true and accurate representation of the chat logs as they occurred on-line between Bringard and Webster, and that they had not been tampered with. In addition, Bringard testified as to the method of storing these logs in a data center and three proxy servers around the country. Based on this testimony, the court did not clearly err or abuse its discretion in allowing the chat logs in evidence.

The entry is:

Judgment affirmed.

---

(Me.1990). The Legislature has also provided that "mistake as to a matter of fact ... may raise a reasonable doubt as to the existence of a required culpable state of mind." 17–A M.R.S. § 36(1) (2007). In the instant case, Webster's belief that Bringard was thirteen

years old was a mistake of fact, but one that indicated his culpable state of mind rather than his innocent state of mind. That there was, in fact, no thirteen-year-old girl does not mean that he did not attempt gross sexual assault on a thirteen-year-old girl.