**2010 ME 34**

**STATE of Maine**

**v.**

**James BERKE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 25, 2010.

Decided: April 13, 2010.

Sarah A. Churchill, Esq., Strike, Goodwin & O'Brien, Portland, ME, for James Berke.

Stephanie Anderson, District Attorney, Megal L. Elam, Deputy Dist. Atty., Portland, ME, for the State of Maine.

Panel: ALEXANDER, LEVY. SILVER, MEAD, GORMAN, and JABAR, JJ.

**LEVY, J.**

[¶ 1] James Berke appeals from a judgment of the Superior Court (Cumberland County, *Cole, J.*) following a jury-waived trial, convicting him of thirteen counts associated with sexual contact with two minors under the age of twelve.[1] On appeal, Berke challenges the Superior Court's admission of certain videotapes into evidence without authenticating testimony. We affirm the conviction.

## I. BACKGROUND

[¶ 2] Viewing the facts in the light most favorable to the State as the prevailing party, the court could have rationally found the following facts beyond a reasonable doubt. *See State v. Bruzzese,* 2009 ME 61, ¶ 2, 974 A.2d 311, 311–12. In late March 2008, Jane,[2] then seven years old, and her sister, then thirteen years old, were spending the night at the house of a

---

**1.** Berke was charged with three counts of sexual exploitation of a minor under 12 (Class A), 17–A M.R.S. § 282(1)(C) (2009); four counts of gross sexual assault (Class A), 17–AM.R.S. § 253(1)(A) (2009); two counts of gross sexual assault (Class A), 17–AM.R.S. § 253(1)(C) (2009); three counts of unlawful sexual contact (Class B), 17–A M.R.S. § 255– A(lXE–l) (2009); and one count of violation of privacy (Class D), 17–A M.R.S. § 511(1)(B) (2009).

**2.** We strive to avoid identifying minors in our opinions. We have therefore adopted pseudonyms for both victims.

longtime family friend, James Berke. Sometime during the visit, the sister saw Jane and Berke exit the bathroom together. Berke was holding a video camera. The sister looked at the contents of the camera when Berke was asleep and found a video that depicted Jane urinating while Berke taped her. The sister placed this video on an external USB drive [3] and showed it to their mother when she returned home.

[¶ 3] After viewing this video, Jane's mother called the police. Detective Dana Thompson responded to the call and interviewed the mother, the sister, and Jane. Jane's mother showed Thompson the video stored on the USB drive. Thompson seized the USB drive and returned to his office.

[¶ 4] Based upon this and other evidence, Thompson sought a warrant to search Berke's home and a warrant for Berke's arrest, both of which were executed on March 23, 2008. Several digital videotapes were found in a box in Berke's walk-in closet and were seized at the time of his arrest. He was charged with violation of privacy pursuant to 17–A M.R.S. § 511(1)(B) (2009).

[¶ 5] Upon examining the videotapes found in Berke's home, Thompson discovered that three tapes, which he labeled Tape 1, Tape 8, and Tape 9, contained homemade movies that depicted Berke engaging in sexual acts with victims under the age of twelve. Because he had interviewed Jane and viewed the video on the USB drive, Thompson was able to recognize her as the victim in Tape 1 and Tape 9.

[¶ 6] Thompson did not recognize the victim in Tape 8. He eventually identified the victim during a follow-up interview with Jane's mother, when he showed her a section of Tape 8 and she recognized the victim as Jill, a four-year-old girl. Jane's mother put Thompson in touch with Jill's mother, who confirmed the victim's identity when shown still images from Tape 8. Berke was subsequently arrested and charged with the remaining twelve counts.

[¶ 7] At trial, the State first called Jane's sister as a witness. The State showed her photographs of two young girls whom she identified as Jane and Jill; the State then proffered the photographs as exhibits. The State also showed the sister a video that she identified as the video she saw during her overnight visit with Berke, and she again identified Jane and Berke as the individuals depicted in the video.

[¶ 8] The State then called Jane's mother, who identified the USB drive that her daughter brought home to show her and identified Berke in the courtroom. The State also called Jill's mother as a witness. She testified that Thompson showed her a still image from a videotape that she recognized as Jill. She also identified Berke in the courtroom.

[¶ 9] Finally, the State called Detective Thompson, who described the investigation that led to the seizure of the homemade videotapes, his viewing of the tapes, and his methods of identifying Berke and both

---

3. An external USB drive is a solid-state memory device that connects to a computer externally through a Universal Serial Bus (USB) port; in retail markets, the device is commonly referred to as a "USB flash drive" or "flash drive" because the device uses flash memory storage technology. *See, e.g., United States v. Burgess,* 576 F.3d 1078, 1090 n. 12 (10th Cir.2009) (explaining flash drive technology); *In re Flash Memory Antitrust Litig.,* 643 F.Supp.2d 1133, 1138–39 (N.D.Cal.2009) (explaining flash memory and its common uses). Jane's sister and mother referred to the external device as a "media stick," which appears to be a variant on the industry term. *See, e.g., United States v. Arnold,* 533 F.3d 1003, 1005 (9th Cir.2008) (noting multiple commonly-used names for the device).

victims. After Thompson testified, the State told the court it was "ready to play the videos." At this point, Berke objected, asserting that the State had not laid a proper foundation for the tapes' admission:

> We haven't heard anybody testify that what is on these tapes is a true and accurate representation of what occurred, and since the tapes in this particular case are being offered as exact[ly] what happened, I would submit there's not a foundation for playing the tape and then admitting it into evidence.

The Superior Court admitted the tapes into evidence, and Berke was subsequently convicted of all thirteen counts. This appeal followed.

## II. DISCUSSION

[¶ 10] Berke argues that the videotapes were not properly authenticated pursuant to M.R. Evid. 901, because the State offered no witnesses who testified that the tapes were a fair and accurate representation of the events. We review a court's rulings on admissibility of evidence for clear error or abuse of discretion. *See State v. Webster,* 2008 ME 119, ¶ 20, 955 A.2d 240, 244.

[¶ 11] Rule 901(a) articulates the standard for authentication of a proffered exhibit: the proponent must produce "evidence sufficient to support a finding that the matter in question is what its proponent claims." *See* M.R. Evid. 901(a); *see also State v. Elwell,* 2002 ME 60, ¶ 13, 793 A.2d 499, 503; *State v. Poirier,* 1997 ME 86, ¶ 4, 694 A.2d 448, 449; *State v. Veglia,* 620 A.2d 276, 279 (Me.1993). The rule lists ten examples of authentication, which it notes are "[b]y way of illustration only, and not by way of limitation." M.R. Evid. 901(b). This standard is identical to that set forth in the Federal Rules of Evidence. *See* Fed.R.Evid. 901. The standard embodies a "flexible approach" to authentica-

tion reflecting a "low burden of proof." *See* Leah Voigt Romano, *Developments in the Law: VI. Electronic Evidence and the Federal Rules,* 38 Loy. L.A. L.Rev. 1745, 1768 (2005); *see also* 2 Kenneth S. Broun et al., McCormick on Evidence § 212, at 6 (6th ed. 2006) ("There is no single formula [for authenticating tangible exhibits] that must be satisfied in every case.").

[¶ 12] The Superior Court admitted the tapes into evidence, over Berke's objection, based on its assessment that the tapes themselves provided evidence of their authenticity and that Berke and the victims were identified as the individuals depicted in the tapes by extrinsic evidence:

> From observing the tapes it would appear that they were probably run by [Berke] or set up by [Berke], he appears throughout the tapes and appears to be adjusting the tapes, moving them around, and directed by him, and the first two tapes seem to run completely in sequence chronologically, the last one there [are] some periods where there's some blurring and so forth, but, again, would seem to be a sequence, chronological sequence that was going forward, and to the extent that [Berke] is identified and the victims are identified therein, as far as I am concerned, that establishes authenticity.

[¶ 13] The trial court's analysis most closely tracks subsection (4) of Rule 901(b), which states that evidence may be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *See* M.R. Evid. 901(b)(4).

[¶ 14] The Superior Court's findings regarding Berke's continual presence in the tapes and the largely sequential nature of the events depicted in the tapes support an inference that the tapes had not been altered, and that they are what the propo-

nent—the State—claimed them to be: videotapes created by Berke that depict him sexually assaulting two young girls. *See United States v. Damrah,* 412 F.3d 618, 628 (6th Cir.2005) (concluding that the defendant's words and presence in videotapes may be used to authenticate the tapes pursuant to Fed.R.Evid. 901(b)(4)); *Gonzalez v. Digital Equip. Corp.,* 8 F.Supp.2d 194, 197 (E.D.N.Y.1998) (noting that proffered videotapes "contain[ed] information" that appropriately authenticated them pursuant to Fed.R.Evid. 901(b)(4)).

[¶ 15] Further, the State introduced the testimony of Thompson, the victims' mothers, and Jane's sister to establish that the individuals depicted in the tapes were Berke and the victims referenced in the indictment.[4] Identification and authentication are closely related concepts, *see* M.R. Evid. 901, and courts have long considered identification of the subjects of a proffered recording to support authentication. *See, e.g., State v. Thomas,* 432 A.2d 757, 761–62 (Me.1981) (noting that a witness's ability to identify speakers in a tape recording contributes to that tape's foundation for admission).[5]

[¶ 16] For purposes of Rule 901(b), "Identification is a matter of relevancy depending on the fulfillment of a condition of fact." Field & Murray, *Maine Evidence* § 901.1 at 532 (6th ed. 2007). Relevancy was established in this case because the content of the videotapes, together with the identification of Berke, Jane, and Jill as the persons depicted in the tapes, are "distinctive characteristics, [that] taken in conjunction with the circumstances," showed that the three videotapes were what the State claimed them to be. M.R. Evid. 901(b)(4); *see also State v. O'Rourke,* 2001 ME 163, ¶ 22 n. 2, 792 A.2d 262, 268 (concluding that the distinctive characteristics of tape-recorded conversations, in conjunction with testimony regarding the conversations, authenticated the recordings). No greater showing was required.

[¶ 17] The Superior Court acted well within its discretion in admitting the videotapes. We are unpersuaded by, and do not address, Berke's remaining arguments.[6]

The entry is:

Judgment affirmed.

4. In addition to the witnesses who identified Berke and the victims, the State introduced two of the photographs used to identify the victims so that the court could compare the photographs to the videotapes to confirm the victims' identities. Berke's contention that the victims on the tapes remained unidentified thus lacks merit and we do not address it further.

5. Although we have recognized in the past that authentication of surveillance recordings created by the State "may well require a more particularized and formal showing by the authenticating witness," *see State v. Thomas,* 432 A.2d 757, 762 (Me.1981), a heightened requirement of authentication was not warranted under the circumstances of this case. *See also United States v. Roach,* 28 F.3d 729, 732–34 (8th Cir.1994) (applying that circuit's test for surveillance recordings, which requires identification of the speakers, to video recordings); *United States v. Lance,* 853 F.2d 1177, 1181–82 (5th Cir.1988) (concluding that identification of speakers in video surveillance recordings, combined with testimony regarding the recordings, authenticated the recordings).

6. In his appeal, Berke also challenged (1) the Superior Court's order (*Wheeler, J.*) denying his motion to suppress the tapes seized during the police investigation; (2) the Superior Court's verbal order denying his motion to merge certain counts in the indictment; and (3) the sufficiency of the evidence that supported his conviction.