2011 ME 121

**STATE of Maine**

v.

**David CHURCHILL.**

Supreme Judicial Court of Maine.

Argued: Nov. 9, 2011.
Decided: Dec. 6, 2011.

---

SILVER, J.

[¶ 1] David Churchill appeals from a conviction entered in the Unified Criminal Docket (Bangor, *Studstrup, J.*) upon a jury verdict of guilty of one count of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2010). Churchill argues that the court erred by admitting in evidence a printout of an online chat between Churchill and the victim because the printout was not authenticated pursuant to M.R. Evid. 901(a). We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] David Churchill and the victim, a twelve-year-old girl, were at the victim's home with two of Churchill's friends from the late evening of July 20, 2009, until the early morning of July 21. Churchill, who was twenty-five years old at the time, was a friend of the victim and her mother. The victim later reported to a friend that sexual acts and contact took place between her and Churchill after her mother left for work on July 21. The victim's mother contacted the Bangor Police Department after the victim's friend informed her of the events. Churchill was charged with one count of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(B) (2010), and one count of unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(F) (2010).

[¶ 3] On July 29, 2009, Detectives Timothy Cotton and Brent Beaulieu met with the victim at her home and arranged for her to call Churchill so that they could record the conversation and any incriminating statements Churchill might make. After several attempts to reach Churchill, his friend answered the telephone and relayed messages between Churchill and the victim. Churchill and the victim also began chatting with each other online through AOL Instant Messenger while the detectives monitored the screen and re-

Hunter J. Tzovarras, Esq. (orally), Bangor, on the briefs, for appellant David Churchill.

R. Christopher Almy, District Attorney, Susan J. Pope, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, on the briefs, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

corded the telephone call. Churchill does not dispute that he was the person with whom the victim was chatting online. During the chat he indicated that he knew the police were at the victim's house. The victim was unable to elicit any definitively incriminating or exculpatory statements from Churchill.

[¶ 4] After the conversation concluded, the victim emailed a transcript of the online chat (the "chat log") to Detective Beaulieu at his Bangor Police Department email address. It is not clear whether the chat log was emailed as an attached document or simply inserted as text into the body of an email. During Detective Cotton's testimony at trial, the State played the recording of the telephone call between Churchill and the victim and offered a printout of the chat log in evidence.[1] Churchill objected to the admission of the chat log. He did not allege that the printout indicated any tampering or that it had actually been tampered with. Instead, he argued that the victim should have authenticated the chat log because she created the email from which the printout was generated and Detective Cotton could not be certain that the victim had not altered it before sending it to the detectives. The court conducted a voir dire examination and admitted the chat log after finding that Detective Cotton's testimony had authenticated the document as a printout of what appeared on the computer screen during the online chat.

[¶ 5] The jury returned a verdict of not guilty of gross sexual assault and guilty of unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E), a lesser-included offense to Class B unlawful sexual contact. The court sentenced Churchill to thirty months' imprisonment, with all but twelve months suspended, and two years of probation. Churchill timely appealed.

## II. DISCUSSION

 [¶ 6] On appeal, Churchill presents one issue for review: whether the trial court erred by ruling that the chat log was authenticated and, therefore, admissible. A trial court's evidentiary ruling is reviewed for clear error or abuse of discretion. *State v. Berke*, 2010 ME 34, ¶ 10, 992 A.2d 1290. Electronic evidence is held to the same standard of authentication as other evidence. "Rule 901(a) articulates the standard for authentication of a proffered exhibit: the proponent must produce evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* ¶ 11 (quotation marks omitted). "The standard embodies a flexible approach to authentication reflecting a low burden of proof." *Id.* (quotation marks omitted).

[¶ 7] We have previously addressed the admissibility of an online chat log pursuant to M.R. Evid. 901(b)(1) in *State v. Webster*, 2008 ME 119, ¶ 20, 955 A.2d 240. In *Webster*, a volunteer for an organization aimed at capturing sexual predators posed as a thirteen-year-old girl while engaging in a series of online chats with the defendant. *Id.* ¶¶ 2–4. A detective from the local police department monitored the chats from the organization's data center as they happened and approved each message the volunteer sent to the defendant. *Id.* ¶ 5. The volunteer testified that the chat logs "were 'absolutely' a true and accurate representation of the chat logs as they occurred on-line between [the volunteer] and [the defendant], and that they had not been tampered with." *Id.* ¶ 20 (alteration omitted). We upheld the trial

---

1. At oral argument the State explained that the document was offered through Detective Cotton rather than the victim in an effort to minimize distress to the victim caused by testifying about what occurred between her and Churchill.

court's ruling that the volunteer's testimony was sufficient to establish authenticity, in part because the volunteer also testified that the chat log was protected from tampering by the organization's practice of uploading the chat logs each day to a data center consisting of three proxy servers in three different states. *Id.* ¶¶ 4, 20.

[¶ 8] Although in *Webster* the testimony indicated a secure storage process that protected against tampering, a particular storage process is not necessary to demonstrate that electronic evidence has not been tampered with. The hallmark of authentication pursuant to M.R. Evid. 901(b)(1) is assurance from the witness that the chat log offered in evidence is a true and accurate representation of the chat as it occurred. *See id.* ¶ 20. It is then up to the jury to decide whether to believe the witness. *See* Field & Murray, *Maine Evidence* § 1001.1 at 560 (6th ed. 2007) ("Questions about the integrity of electronic data generally go to the weight of electronically based evidence, not its admissibility."). Here, Detective Cotton observed each line of the chat as it appeared on the screen at the same time it was happening. He testified that the victim aided the detectives in "getting a copy of exactly what was on the screen," the printout was identical to the chat he observed take place on the computer screen, and he had no doubt the printout was the same chat he observed. He also testified that the victim did not type anything new or change anything before emailing the document to Detective Beaulieu. The court properly concluded that this testimony was sufficient to authenticate the chat log; whether the chat log was in fact a true and accurate representation of the chat that Detective Cotton witnessed was ultimately a question for the jury.

[¶ 9] In *Webster*, secure storage lent assurance to the witness's testimony that the chat log had not been manipulated since its creation. Here, the detectives' close supervision of both the chat and the victim provided similar protection from tampering. Detective Cotton testified that he stood over the victim's shoulder with Detective Beaulieu and did not move from that position at any time while the victim saved and emailed the document. Detective Beaulieu also worked with the victim to "capture" the chat and was involved in the process of obtaining a copy of exactly what was on the screen. The email containing the chat log arrived in Detective Beaulieu's inbox on his cellular telephone while the detectives were with the victim and it remained in police custody thereafter. The detectives' monitoring of the chat, close supervision of the victim while she saved and sent the chat log, and possession of the chat log at all times thereafter support Detective Cotton's testimony that the copy of the chat log he viewed at trial was a true and accurate representation of the chat he witnessed.

[¶ 10] The chat log was also authenticated by its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." M.R. Evid. 901(b)(4); *see Berke,* 2010 ME 34, ¶ 13, 992 A.2d 1290. In *Berke,* we upheld the admission of videotapes depicting sexual assault because, together with testimony establishing the identity of the defendant and the victims, the defendant's "continual presence in the tapes and the largely sequential nature of the events depicted in the tapes support an inference that the tapes had not been altered, and that they are what the proponent—the State—claimed them to be." 2010 ME 34, ¶¶ 14–16, 992 A.2d 1290. Here, the time stamps on each message show an uninterrupted sequence, the messages respond logically to one another, and Churchill's messages respond directly to statements the victim made over the telephone. Other evidence estab-

lished that Churchill was the person with whom the victim was chatting, so "[n]o greater showing was required." *Id.* ¶ 16.

The entry is:

Judgment affirmed.