MAINE SUPREME JUDICIAL COURT                               Reporter of Decisions
Decision:      2016 ME 50
Docket:        Pen-15-237
Argued:        March 2, 2016
Decided:       April 7, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
               HUMPHREY, JJ.

## STATE OF MAINE

v.

## KYLE J. DUBE

HUMPHREY, J.

[¶1]  Kyle Dube appeals from a judgment of conviction for the kidnapping and murder of a fifteen-year-old girl, in violation of 17-A M.R.S. §§ 201(1)(A) and 301(1)(B)(1) (2015), entered in the Unified Criminal Docket (Penobscot County, *A. Murray, J.*) after a two-week jury trial.  He argues (1) that the trial court erred by admitting nonexpert opinion testimony regarding handwriting to prove that he wrote a document admitting to the crime, and (2) that his right to a fair trial was prejudiced by the State's comments in its closing that the jurors should use their "common sense" in evaluating the evidence.  Discerning no error, we affirm the judgment.

## I. BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts.  *See State v. Weaver*, 2016 ME 12, ¶ 2, 130 A.3d 972.  Using a Facebook account in the name of a different man, Kyle Dube arranged to meet the victim, an acquaintance, on a corner outside her home on the evening of May 12, 2013.  When the victim arrived at the meeting location, Dube emerged from the bushes wearing a knit ski hat, seized her, and choked her when she resisted.  Dube then bound the victim, who was unconscious, put her in the back of his pick-up truck, and drove to a secluded area.  When he checked on her, the victim was dead.  Dube removed the victim's clothing, concealed her body with leaves and debris, and threw her clothing into the woods alongside the road as he drove away.[1]  Following a missing person investigation and the subsequent discovery of the victim's body, Dube was indicted on May 29, 2013, and pleaded not guilty at his arraignment.  The jury trial began on February 23, 2015.

---

[1]  Although Dube is not challenging the sufficiency of the evidence, the record shows that there was sufficient evidence to support his conviction, including computer forensic evidence showing that Dube controlled the Facebook account used to lure the victim; circumstantial evidence that Dube's whereabouts were unaccounted for on the night of the victim's disappearance; cell tower data placing Dube in the vicinity of where the victim's body was located; evidence of Dube's DNA on a knit hat and sock found at the meeting location and from the victim's fingernails; evidence of scratches on Dube's face that were first seen after the victim's disappearance; testimony by Dube's girlfriend that he admitted to her that he killed the victim and told her where he hid the victim's body–testimony corroborated by the fact that Dube's girlfriend was able to lead the police to the body; and evidence of Dube's statements to fellow inmates that he had murdered the victim.  Dube's handwritten statement detailing the crime, which is at issue in this appeal, is described separately below.

[¶3]  At trial, the State sought to admit a sixteen-page handwritten statement, purportedly written by Dube while he was incarcerated for an unrelated crime, describing the details of the kidnapping and murder.  On May 17, 2013, while the criminal investigation was ongoing, Dube reported to the Penobscot County Jail to serve a thirty-day sentence for a traffic offense.  Dube was put in a cell adjacent to another inmate, and the two men engaged in written communications via "fishing," or throwing an object from one cell to another with a string tied to the object for retrieval.  When the other inmate was transferred to a different facility, he gave correctional officers sixteen handwritten pages, many double-sided, that he said were given to him by Dube.  The pages, which became State's Exhibit 75, essentially constitute a handwritten, unsigned confession describing details of the kidnapping and murder.[2]  When called as a witness to identify the document at a pre-trial hearing, however, the inmate refused to answer any questions.[3] Thereafter, the State notified Dube and the court that it intended to call several other witnesses to identify the handwriting in the document as Dube's.

[¶4]  At Dube's request, the court conducted voir dire of those witnesses before deciding whether to permit the State to present their testimony to the jury.

---

[2]  The inmate testified that the cursive writing on the last page of State's Exhibit 75 was his own. Several pages of the document were redacted by agreement of the parties to remove statements of unrelated criminal activity by Dube.

[3]  The inmate changed his mind and eventually testified at the trial.

4

During voir dire, two of Dube's former co-workers each testified that, based on his familiarity with Dube's handwriting on incident reports created in the course of their employment with an assisted living agency, the handwriting on State's Exhibit 75 resembled Dube's.[4] One co-worker testified that he worked with Dube for about a month almost two years prior to the time of the trial. He said that he observed Dube's handwriting five or six times during the month they worked together and each sample was five or six sentences long. That co-worker also testified that he had been contacted by law enforcement a few days earlier to look at some documents, and that he told law enforcement that the documents provided—Exhibit 75—"looked a lot like what I could remember of Kyle's handwriting where he had—would have some stuff scratched out and that his handwriting wasn't too—always too straight and that sometimes it did look like chicken scratch."

[¶5] The second co-worker testified that he had worked with Dube for a period of two to three months around eighteen months before the voir dire proceeding and had observed Dube's handwriting on approximately five occasions. He stated that he had been contacted by law enforcement the week before he was scheduled to give his testimony to "identify a handwriting." The second co-worker

---

[4] A third co-worker was questioned in the voir dire proceeding, but the court disallowed his testimony at trial based on his insufficient familiarity with Dube's handwriting.

identified the handwriting in State's Exhibit 75 as being Dube's without a doubt in his mind.[5]

[¶6] Kyle Dube's father also underwent voir dire on two occasions relating to his son's handwriting. Although he stated that he did not recognize the handwriting on some pages of State's Exhibit 75 on the first occasion, he stated on the second occasion that several pages looked similar to Dube's handwriting. He testified that he has seen his son's handwriting many times.

[¶7] Finally, Dube's girlfriend at the time of the kidnapping and murder testified that she recognized the handwriting on a number of pages in State's Exhibit 75 as being Dube's. Her familiarity with Dube's handwriting was based on two letters totaling four pages that she had received from Dube almost two years earlier and had not reviewed since that time. She also testified that she had

---

[5] During a court recess, Dube's mother and aunt reported to the court that they had overheard the co-workers discussing their testimony outside the courtroom. The mother stated that one had told the other to "keep with your story" and had commented, "none of us are handwriting experts." Both men were called back for further voir dire, during which the first co-worker acknowledged speaking with the second about his frustrations with the questioning but denied that the second co-worker had told him to keep with his story; the second co-worker denied discussing the testimony with his co-worker at all. Dube moved to strike any testimony regarding handwriting by both men, and the motion was denied.

Dube does not directly challenge the trial court's denial of his motion to strike the co-workers' testimony based on their conversation outside the courtroom. Nonetheless, the co-workers' conversation would not have provided an independent basis to exclude their testimony—even though the court found that at least one of the men may have talked about his frustration with answering questions and being at the courthouse—because there was no indication that either man influenced the other's testimony.

6

been contacted by the prosecution one week before her testimony to identify the handwriting in State's Exhibit 75.

[¶8]  Over Dube's objection, the court ruled that these four witnesses could provide testimony identifying the handwriting in State's Exhibit 75 as Dube's.  On March 6, 2015, after a two-week trial, the jury returned a guilty verdict on both charges, and the court adjudged Dube guilty on May 8, 2015.[6]  Dube timely appealed his conviction pursuant to 15 M.R.S. § 2115 (2015) and M.R. App. P. 2.

## II.  DISCUSSION

### A.    Nonexpert Opinion Testimony Regarding Handwriting

[¶9]   Dube argues that the court erred in admitting the nonexpert opinion testimony of his co-workers, his girlfriend, and his father regarding the handwriting in State's Exhibit 75 because (1) these witnesses did not demonstrate sufficient familiarity with Dube's handwriting to offer nonexpert handwriting opinions; (2) the fact that his co-workers and his girlfriend were approached by law enforcement specifically to identify State's Exhibit 75 calls the reliability of their testimony into question; and (3) the nonexpert opinion testimony provided no benefit to the jury.

---

[6]  The court sentenced Dube to a sixty-year term of imprisonment on the murder charge and a concurrent thirty-year term of imprisonment on the kidnapping charge.  The court also ordered Dube to pay $12,881.95 in restitution to the Victims' Compensation Fund and to the victim's father.  The Sentence Review Panel denied Dube's application for leave to appeal his sentence on October 2, 2015.

[¶10]  We review a trial court's admission of nonexpert opinion testimony for an abuse of discretion.  *State v. Robinson*, 2015 ME 77, ¶ 21, 118 A.3d 242. Pursuant to Maine Rule of Evidence 701, nonexpert opinion testimony is admissible if the testimony "is limited to opinions that are: (a) Rationally based on the witness's perception; and (b) Helpful to clearly understanding the witness's testimony or to determining a fact in issue."  Nonexpert opinion testimony about handwriting is specifically admissible to "authenticate" a piece of evidence—or "support a finding that the item is what the proponent claims it is." M.R. Evid. 901(a), (b)(2).  Specifically, "[a] nonexpert witness can give his opinion authenticating a writing as long as he has sufficient familiarity with the handwriting of the putative writer and that familiarity was not acquired for purposes of the litigation."  *State v. Ilsley*, 595 A.2d 421, 422-23 (Me. 1991) (citing M.R. Evid. 901(b)(2)).  "[A]n assertion by the witness coupled with a description of circumstances from which knowledge might reasonably be acquired is ordinarily sufficient to allow him to give an opinion."  *Id.* at 423 (quotation marks omitted).

[¶11]  Generally, "[a] showing of limited opportunity to become familiar with the handwriting goes to [the opinion's] weight, not its admissibility, unless the circumstances satisfy the judge that identification would so lack in reliability that the judge should exclude it."  Field & Murray, *Maine Evidence* § 901.2 at

535 (6th ed. 2007). Consistent with this principle, we have stated that Maine Rule of Evidence 901 "embodies a flexible approach to authentication reflecting a low burden of proof." *State v. Berke*, 2010 ME 34, ¶ 11, 992 A.2d 1290 (quotation marks omitted).

[¶12] Dube's contention that the witnesses did not demonstrate a sufficient degree of familiarity with his handwriting is unconvincing. Dube's co-workers and his girlfriend each asserted some degree of familiarity with Dube's handwriting, coupled with a description of the circumstances from which this familiarity was acquired. Although Dube's father did not describe the circumstances by which he became familiar with his son's handwriting, he testified that that he had seen his son's handwriting on many occasions. Dube has not provided any relevant authority to suggest that the depth of each witness's familiarity affected the admissibility of the evidence rather than its weight, especially in light of the "low burden of proof" for admitting nonexpert opinion testimony about handwriting contained in Rule 901.[7] *See Berke*, 2010 ME 34, ¶ 11, 992 A.2d 1290 (quotation marks omitted).

---

[7] The cases from other jurisdictions cited by Dube are inapposite because they involve the admission of nonexpert testimony regarding handwriting where the witness did not specify the circumstances under which he observed the handwriting at issue and thus could not demonstrate that the writings "were observed under circumstances indicating their genuineness." *See United States v. Binzel*, 907 F.2d 746, 749 (7th Cir. 1990) (quotation marks omitted). In this case, as opposed to providing "bald allegations" of familiarity with Dube's handwriting, *see Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1260 (11th Cir. 2004), Dube's co-workers and his girlfriend identified specific circumstances and specific documents they relied upon in gaining familiarity with Dube's handwriting. Although Dube's father did

[¶13]  Dube's second contention, that the reliability of the testimony by his co-workers and his girlfriend was questionable because they were asked to look at State's Exhibit 75 under suggestive circumstances, is also unconvincing as it bears on the *admissibility* of that evidence.  Once the trial court has determined that a witness's testimony is admissible, "[t]he weight and significance accorded the evidence and the evaluation of witness credibility are the exclusive province of the jury."  *See State v. Eaton*, 669 A.2d 146, 151 (Me. 1995).  Further, all three witnesses clearly testified during voir dire that they had been asked to look at State's Exhibit 75 without being told that it was purportedly written by Dube.

[¶14]  Finally, Dube's argument that the nonexpert handwriting testimony should have been excluded because it "provided absolutely no benefit to the jury" fails.  Dube argues that the testimony did not aid the jury because the jury "could easily have been presented with State's Exhibit 75 along with the genuine sample of Mr. Dube's handwriting that was contained in State's Exhibit 89 which was an incident report completed by Mr. Dube in the course of his employment."  However, the nonexpert handwriting witnesses were not called to compare these two documents for the jury, but rather to opine on the handwriting in State's Exhibit 75 based on their familiarity with Dube's handwriting from multiple

not identify specific documents or circumstances, the court could have reasonably surmised that a father's testimony that he had seen his son's handwriting on many occasions was a sufficiently credible claim of familiarity.

sources not in evidence. Barring nonexpert handwriting testimony where any undisputed sample of a person's handwriting is in evidence would significantly undermine, if not eviscerate, the allowance for this testimony under Maine Rule of Evidence 901(b)(2).[8]

[¶15] For these reasons, the court did not err in admitting the nonexpert opinion testimony. Furthermore, even if the court had erred by admitting the testimony of those particular witnesses, it is highly probable that any error would have been harmless given the additional evidence authenticating State's Exhibit 75—including the presence of Dube's palm print on the document and the identification by the fellow inmate who received the document from Dube. *See* M.R.U. Crim. P. 52(a).

B.      State's Appeal to the Jury's "Common Sense"

[¶16] Dube also contends that the State's repeated mention of the jurors' "common sense" in its closing argument deprived him of his right to a fair trial.[9] For example, the prosecutor stated,

---

[8] Dube cites *Noyes v. Noyes*, 112 N.E. 850 (Mass. 1916) to support his argument. However, *Noyes* merely holds that "[w]here undoubted standards of handwriting . . . are before the jury, there is no occasion for the testimony of one who is neither an expert *nor possessed of considerable familiarity with the handwriting of the person whose [handwriting] is under examination*." *Id.* at 851 (emphasis added). In that case, the nonexpert witness had seen the party write his signature on one occasion. *Id.* In this case, all four witnesses testified that they had greater familiarity with Dube's handwriting.

[9] Although the State appealed to the jurors' "common sense and reason," Dube only contests the appeal to "common sense." Similarly, though Dube mentions the State's use of "common sense" in its opening statement, he substantively addressed only the State's closing in his brief.

when you consider the evidence, when you use your good old-fashioned common sense and reason, your only conclusion—your only verdict can be that [Dube] is guilty of kidnapping and murdering [the victim], because your common sense and reason tells you that [Dube] created the fake [Facebook] account and that it was [Dube] who wanted to meet with [the victim] that night. . . . When you consider your—the evidence, when you use your common sense and your reason, there is only one verdict that you can reach, and that is that [Dube] kidnapped and murdered [the victim].

Because Dube's counsel did not object to the prosecutor's statements at the time, we review for obvious error. *See* M.R.U. Crim. P. 52(b); *State v. Dolloff*, 2012 ME 130, ¶ 35, 58 A.3d 1032.

[¶17] Dube asserts that the potential danger of appealing to the jury's common sense is that it could dilute the burden of proof or undercut the gravity of their decision. We disagree. It is well established that "[d]uring closing argument, the State may appeal to the jury's common sense and experience without crossing the line into prohibited argument." *State v. Ashley*, 666 A.2d 103, 106 (Me. 1995) (quotation marks omitted); *see also State v. Schmidt*, 2008 ME 151, ¶ 17, 957 A.2d 80. We have held that a trial court's instruction that "[r]easonable doubt is . . . a doubt based on reason and common sense" did not impermissibly dilute the State's burden of proof because that instruction "served only to emphasize that the jury should bring good judgment to bear on its deliberations."[10] *State v. Estes*,

---

[10] In this case, the court gave the same instruction as the instruction at issue in *Estes*, which is a recommended instruction in the Maine Jury Instruction Manual. *See* Alexander, *Maine Jury Instruction Manual* § 6-7 at 6-13 (2015 ed.).

12

418 A.2d 1108, 1115 (Me. 1980) (emphasis omitted).  Here, the State did not even connect the jurors' "common sense" to the meaning of reasonable doubt, but merely asked them to apply their common sense when considering the evidence. *Cf. id.*  Generally, jurors' use of common sense is to be encouraged as long as they ultimately consider whether the evidence establishes guilt beyond a reasonable doubt.  And unlike in *State v. Uffelman*, 626 A.2d 340 (Me. 1993), where we considered whether the trial court had "erred in its instruction on reasonable doubt by analogizing the jurors' responsibility to the decisions they make in their private lives," *id.* at 342, here the State did not in any way compare the jurors' decision to the decisions they make in their personal lives.

[¶18]  There was no error, much less an error so "highly prejudicial" to Dube that it "so tainted the proceeding as virtually to deprive [him] of a fair trial," *see id.* (quotation marks omitted), given the court's clear instructions to the jury that "proof beyond a reasonable doubt . . . is proof of guilt sufficient to convince you . . . that the charge is almost certainly true."  We discern no obvious error, and we affirm the judgment.

The entry is:

Judgment affirmed.

**On the briefs:**

Stephen C. Smith, Esq., and Caleb J. Gannon, Esq., Lipman & Katz, P.A., Augusta, for appellant Kyle J. Dube

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Caleb J. Gannon, Esq., for appellant Kyle J. Dube

Donald W. Macomber, Asst. Atty. Gen., for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2013-1990
FOR CLERK REFERENCE ONLY