MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 77
Docket:       Pen-23-429
Argued:       September 11, 2024
Decided:      November 26, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## STATE OF MAINE

v.

## TREVOR I. DESROSIERS

CONNORS, J.

[¶1]  Trevor I. DesRosiers appeals from a judgment of conviction entered by the trial court (Penobscot County, *Mallonee J.*) after a jury returned guilty verdicts on three counts of sexual abuse of a minor and three counts of furnishing liquor to a minor.  DesRosiers argues that there was insufficient evidence presented at trial to establish that he and the victim were not married at the time they engaged in the sexual acts or to establish the victim's age in Counts 1-4 of the indictment, and that the State committed multiple incidents of prosecutorial error in its closing arguments that, individually or cumulatively, deprived him of a fair trial.  We disagree with DesRosiers's arguments regarding the sufficiency of the evidence, and although one of the

2

prosecutor's comments constituted error, it was harmless beyond a reasonable doubt; hence, we affirm the judgment.

## I. BACKGROUND

[¶2] "We recite the evidence in the light most favorable to the verdict." *State v. Harding*, 2024 ME 67, ¶ 2, --- A.3d ---.

### A. Initial Investigation

[¶3] On May 21, 2020, while washing dishes, the victim's grandmother saw, through her kitchen window, the victim leave her parents' home and proceed through a small patch of woods next to the grandmother's house. The grandmother thought that the victim was coming to visit her, but when the victim reached the grandmother's lawn, she darted out to the road and headed away from the house. The grandmother called the victim's mother, who proceeded to her car to search for her daughter. While searching, the mother saw the victim in the passenger seat of a Jeep driven by an older man wearing a cowboy hat. The mother immediately pulled her car over and called 9-1-1; in doing so, she lost track of the Jeep.

[¶4] A Maine State Police trooper responded and, after speaking with the mother, continued to canvas the area. While canvassing, the trooper received

information from multiple sources that led him to DesRosiers's home. When the trooper arrived, he saw a Jeep parked next to a camper trailer.

[¶5] As the trooper testified and as captured by the audio of his cruiser's camera, the trooper went to the front door of the camper and announced himself as State Police. Through a camper window, the trooper watched as DesRosiers put on his pants and made his way to the door. When DesRosiers opened the door, the trooper observed that DesRosiers had an erection. The trooper asked DesRosiers where "she" was. When DesRosiers responded that there was no one inside the camper, the trooper asked for consent to search the camper, which DesRosiers refused.

[¶6] After denying that there was anyone in the camper, when the trooper informed him that he was looking for the victim, identifying her as fifteen years old, DesRosiers responded, "I don't know where she is. She must have run out the window." DesRosiers then said that he would send her out and can be heard on the audio yelling, "It's time to get up you gotta go." Seconds later, DesRosiers came back to the door and said, "Nope, she ain't here bubba, I ain't letting you in man you gotta get a warrant I'm sorry I don't know what to do man . . . she ran." DesRosiers then turned back into the camper and said, "You gotta go."

4

[¶7]  During this interaction, the trooper shined his flashlight through the camper window and saw the victim emerge from DesRosiers's bed, wearing no clothing other than a bra.  DesRosiers yelled at the victim, "What the fuck is wrong with you?  You lied to me" and "I can't even believe you, but I'm glad I didn't fuck you."  Despite denying to the trooper that any sexual acts occurred between him and the victim, DesRosiers later confirmed to a friend that he and the victim had had sex.

[¶8]  The victim initially denied that she and DesRosiers had had sex.  After working with a therapist, however, she disclosed to her mother that she and DesRosiers had had sex on multiple occasions.  The mother then called the trooper, who made a referral to the Child Advocacy Center (CAC) for an interview.  Based on information disclosed during the CAC interview, the trooper drafted a search warrant and obtained DesRosiers's and the victim's Facebook messages.

## B.    Facebook Messages

[¶9]  The Facebook messages showed that DesRosiers contacted the victim on May 7, 2020.  DesRosiers asked the victim how old she was, and she told him that she was fifteen,[1] to which he responded, "I would totally chill with

---

[1]  The victim also testified at trial that she specifically told DesRosiers that she was fifteen.

you, but I don't want your parents to shoot me." DesRosiers then asked the victim whether she wanted to sneak out and arranged to pick her up later that evening and supply her with alcoholic beverages. DesRosiers and the victim corresponded until late in the evening on May 7, when DesRosiers picked up the victim, and the two stayed in his camper until May 8.

[¶10] DesRosiers and the victim continued communicating over Facebook and arranging meeting times. On May 19, 2020, DesRosiers messaged the victim and said, "Here I am building a house[], looking for a wife, wanting to settle down . . . . And you come along." He added, "You tell me you want me, and love me, you want to be with me, but your under age. . . . I'm having a hard time telling you no . . . . This hurts."

[¶11] On May 11, 2020, DesRosiers and the victim also discussed the prospect of the victim's emancipation. The victim messaged DesRosiers that she was trying to become emancipated so that she could see him and stay with him more often, to which he responded that he understood but if he told her parents that they would not go out without her parent's permission, her parents might like him more. The Facebook messages show that DesRosiers and the victim continued to discuss emancipation until May 21, the night that the trooper arrived at DesRosiers's camper. Even after the trooper had picked

6

up the victim from DesRosiers's home on May 21, DesRosiers continued to message the victim, saying, "I'm glad I didn't fuck you . . . I would be in a lot of trouble if I slept with you."

## C. Arrest and Trial

[¶12] DesRosiers was arrested and charged by complaint on June 21, 2022, and indicted by a grand jury on March 1, 2023. The indictment charged DesRosiers with committing six crimes under two statutes over three separate days: sexual abuse of a minor (Class C), 17-A M.R.S. § 254(1)(A), (A-2) (2024), and furnishing liquor to a minor (Class D), 28-A M.R.S. § 2081(1)(A)(2) (2024), on or about May 8, 2020 (Counts 1-2), May 16, 2020 (Counts 3-4), and May 21, 2020 (Counts 5-6).

[¶13] A jury trial was held on April 20 and 21, 2023, during which the jury heard testimony from the victim, the victim's mother, the victim's grandmother, the trooper, a witness who assisted the trooper in locating DesRosiers's Jeep, and an acquaintance of DesRosiers.

[¶14] The victim testified that her relationship with DesRosiers lasted approximately four weeks. They began communicating when DesRosiers added her as a friend on Facebook and sent her a message. She testified that May 7, 2020, was the first time they conversed online and agreed to meet up

and go to his camper to drink together and hang out. She testified they also smoked marijuana and had sex. She described how they did not have oral sex on the first night but that they did have intercourse.

[¶15] The victim testified that DesRosiers was worried about getting caught talking with her and having sex with her, so he told her never to discuss sex or intimacy online, but said that if they did, she needed to delete it later.[2] DesRosiers asked her to send messages to make it look like she "wanted him."

[¶16] The victim described hanging out with DesRosiers again two or three days after they first met up. She testified that during one of her encounters with DesRosiers, they had sex in a different position, which resulted in her having a bad feeling over her whole body, but that they continued to see each other after that incident.

[¶17] The victim also described the night of May 21, when the trooper arrived at DesRosiers's camper while she and DesRosiers were in bed together. She said that after DesRosiers picked her up, they went to his camper, drank alcohol, and then had sex. She then described seeing headlights in the driveway and telling DesRosiers that it was a police officer. She said that after telling

---

[2] The victim referenced the Facebook messages between DesRosiers and the victim during her testimony, describing how she told him that she was having her period, and she was confused by his response when he said that whether she was on her period was irrelevant because they were just friends. She testified that his response surprised her because they were having sex.

8

DesRosiers "it was a cop car," he "freaked out" and told her to get down and stay there. The victim said that she was surprised when she heard DesRosiers say that he was glad that they did not have sex because they had had sex on multiple occasions. When asked how many times she and DesRosiers had had sex between the night they first met and when the trooper arrived on May 21, the victim said it was almost every time she was with him, but she could not say exactly how many times. She also testified that DesRosiers provided her with alcohol almost every time they were together.

[¶18] At the close of the State's evidence on the second day of trial, DesRosiers orally moved for a judgment of acquittal on the three counts of sexual abuse of a minor, arguing that the State did not prove that DesRosiers and the victim were not married, which is an element of the crime. *See* 17-A M.R.S. § 254(1)(A), (A-2). The trial court denied the motion.

[¶19] Thereafter, in his closing, the prosecutor included the following comments:

> [O]ne of the things we want to emphasize again is that sexual abuse of a minor means that in this case [the victim] was 15 and the person who was having sex with her was more than ten years older. Whether she consented or not is absolutely irrelevant. . . . [T]he statute is designed to protect younger people. And now that you've heard the evidence, you can understand why we have such a law, given the facts that you've learned, why this defendant is prohibited from doing what he did.

The prosecutor added:

> [W]e identify what type of person [DesRosiers] is, thirty-five-year-old man with a 15-year-old girl. And the type of person that he is is a big part of this case because it shows you that not only was he . . . taking advantage of a 15-year-old girl but he was being devious, very devious. And this deviousness that we're talking about is certainly emphasized in that initial conversation that he had with [the] Trooper.

The prosecutor continued, arguing, in reference to the video of the May 21, 2020, interaction between the trooper and DesRosiers at the camper, that

> this defendant flat out told a falsehood. And there's another word for falsehood, and we'll use it maybe just once or twice, but it's based upon the evidence. He flat out lied to that trooper, and that's based upon the evidence. It's based upon the evidence that he was a liar at that moment.
> . . .
>
> And then when he was pressed on the matter, he says, well, you need a warrant to get in here. What's the implication of that.
> . . .
>
> Now, as the evidence in this case progresses, we not only just find out who, we're starting to find out what type of person he is. We also find out how it came to be that this defendant was able to use the circumstances of this rural area at this time in our lives, the pandemic. He used the – he used the fact that [the victim] was 15 years old.

Finally, in rebuttal, the prosecutor added:

Credibility, believability, who's telling the truth, that's important. And we would suggest to you there's nothing in this record that you've heard today that [could] make you pause about whether or not [the victim] was being up front or whether or not this trooper was being accurate. . . .

And then to cast aspersions upon [a witness] who went out of her way to help this fella, to suggest that she came in here and deliberately told you something that wasn't true, that's why we rely on you folks. That's why you're here, to distinguish between fact and fiction.

Facts are what you heard from the witness stand. The fiction is what he told [the] Trooper . . . that night. One thing after another was fiction. What you heard in this courtroom was fact. Thank you.

DesRosiers did not object to any of these comments at trial.

[¶20] The jury found DesRosiers guilty of all six counts, and the court entered a judgment of conviction. Following the verdict, DesRosiers again moved for a judgment of acquittal on the three counts of sexual abuse of a minor, which motion the court again denied. *See* M.R.U. Crim. P. 29(b). The court subsequently sentenced DesRosiers to three concurrent terms of imprisonment of forty-two months, with all but twenty months suspended, for the counts of sexual abuse of a minor, and three concurrent terms of imprisonment of three months for the counts of furnishing liquor to a minor. DesRosiers timely appealed. M.R. App. P. 2B(b)(1).

## II. DISCUSSION

### A. There was sufficient evidence to sustain the jury's verdict.

#### 1. Standard of Review

[¶21]  When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view the evidence presented at trial in the light most favorable to the verdict to "determine whether any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Pelletier*, 534 A.2d 970, 972 (Me. 1987); *see also Harding*, 2024 ME 67, ¶ 2, --- A.3d ---.  Circumstantial evidence is sufficient to establish elements of a crime, *see State v. Weisbrode*, 653 A.2d 411, 415 (Me. 1995), and a "conviction based on circumstantial evidence may be affirmed even if the inferences drawn from circumstantial evidence are contradicted by parts of the direct evidence," *State v. Tieman*, 2019 ME 60, ¶ 19, 207 A.3d 618 (quotation marks omitted).

[¶22]  Notably, in assessing the evidence, a jury is not required to leave its common sense at the courthouse door.  *See State v. Trask*, 223 A.2d 823, 827 (Me. 1966) ("Jurors, as well as courts, are permitted to use their common sense in drawing conclusions that naturally are to be drawn from facts proved."

12

(quotation marks omitted)); *cf. State v. Dube*, 2016 ME 50, ¶ 17, 136 A.3d 93;[3]

*United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992).[4]

> **2.   There was sufficient evidence to establish that DesRosiers and the victim were not married.**

[¶23]  Someone is guilty of sexual abuse of a minor if that "person engages in a sexual act with another person, not the actor's spouse, who is either 14 or 15 years of age and the actor . . . . is at least 10 years older than the other person."  17-A M.R.S. § 254(1)(A), (A-2).  DesRosiers argues that the State never established that he and the victim were not married and, therefore, a jury could not have found beyond a reasonable doubt facts supporting the non-spousal

---

[3]  In *Dube*, we stated:

> It is well established that '[d]uring closing argument, the State may appeal to the jury's common sense and experience without crossing the line into prohibited argument.'  We have held that a trial court's instruction that '[r]easonable doubt is . . . a doubt based on reason and common sense' did not impermissibly dilute the State's burden of proof because that instruction 'served only to emphasize that the jury should bring good judgment to bear on its deliberations.'

*State v. Dube*, 2016 ME 50, ¶ 17, 136 A.3d 93 (citations omitted).

[4]  The First Circuit stated:

> When assessing sufficiency challenges in criminal cases, we have remarked, time and again, that factfinders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings.  Thus, jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience. *See . . . United States v. Ingraham,* 832 F.2d 229, 240 (1st Cir. 1987) ("The law is not so struthious as to compel a criminal jury to ignore that which is perfectly obvious.").

*United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992) (citation omitted).

element. The State concedes that there is no direct evidence in the record to establish that DesRosiers and the victim were not married when the sexual acts occurred but argues that the record "leads inexorably" to the conclusion that the two were not married. We agree with the State.

[¶24] Although at times it may be awkward for a prosecutor to elicit testimony from a youthful victim that the victim was not married to the perpetrator of a sexual crime, that testimony or other direct evidence is the most secure route to prove this element of the crime. That said, however, circumstantial evidence may suffice. *See, e.g.*, *State v. Joel H.*, 2000 ME 139, ¶¶ 2-12, 15-16, 755 A.2d 520 (affirming a conviction in the absence of direct evidence of non-marital status, identifying as supporting that conclusion factors such as the age differential between the victim and the defendant and that the defendant lived in a different household from the victim).[5]

---

[5] Factors that have been cited elsewhere to support a conclusion in a criminal prosecution to prove beyond a reasonable doubt that the victim and the defendant were not married in the absence of direct evidence include living arrangements, the victim's age and school attendance, and the victim's actions immediately following the incident. *See generally State v. Pitre*, 893 So. 2d 1009, 1013-16 (La. Ct. App. 2005) (discussing that circumstantial evidence, such as the youth of the victim, where she was living, the role her mother played in her life, her child-like appearance at trial, and contact with the child protection agency supported the finding that the victim and the defendant were not married and noting "the existence or non-existence of a marital relationship between the defendant and the victim must be based on all the facts presented, rather than on the lack of a single question") (quotations omitted); *Smith v. Commonwealth*, No. 1902-93-1, 1995 WL 452348, at *1 (Va. Ct. App. Aug. 1, 1995) (concluding that unmarried status was proven by factors such as lack of co-habitation, the defendant never telling police that he was married to the victim but describing her as someone "who I knew"); *State v. Shuck*, 661 P.2d 1020, 1021 (Wash. Ct. App. 1983) (determining that it was reasonable to infer that there was no marriage when the victim was in the ninth grade,

14

[¶25]    Here, the evidence established that the victim was fifteen, attending school, and living with her parents.  The entirety of the relationship between the victim and DesRosiers, who was thirty-five years old, lasted one month, beginning with Facebook messaging and ending when the victim was found in DesRosiers's camper.  The victim snuck out to meet DesRosiers, with her mother asking the police to find her daughter after the victim's grandmother saw the victim surreptitiously leaving her home.  Instead of indicating that she was married to DesRosiers, the victim at first denied that she had ever had sex with him, and she never thereafter suggested that she and DesRosiers were married.

[¶26]  When the victim told DesRosiers, before they met in person, that she was fifteen years old, DesRosiers responded that he would like to hang out but did not want her parents to shoot him.  When confronted by the police, DesRosiers's response was to announce (falsely) that he was glad that he had

---

her acquaintance with the defendant lasted only one month, and she had never spent the night at the defendant's house); *Salinas v. State*, No. 13-11-00210-CR, 2013 WL 485805, at \*2 (Tex. App. Feb. 7, 2013) (citing factors to support proof of unmarried status such as the victim's testimony that she felt "scared and nervous" regarding her relationship with the defendant and she did not tell anyone about their relationship because she was afraid of how her parents and the defendant would react); *People v. McMullen*, 414 N.E.2d 214, 216 (Ill. App. Ct. 1980) (sufficient circumstantial evidence included unrebutted evidence of the parties' dissimilar names, the victim's youth, and the victim's attendance at school and residence with parents); *Commonwealth v. Cole*, 445 A.2d 829, 831 (Pa. Super. Ct. 1982) (surveying case law and citing factors such as brevity of acquaintance, the victim's living with parents, the age disparity between the defendant and the victim, and the defendant's and victim's dissimilar surnames).

not had sex with the victim. As late as May 19, two days before the trooper arrived at the camper, DesRosiers told the victim that he was looking for a wife, and she responded, "maybe I'm the one you're looking for." The record also demonstrates that DesRosiers was discussing emancipation with the victim on the night that the trooper arrived at the camper and that after the victim left with the trooper, DesRosiers messaged her to express how glad he was that they did not have sex because he "would be in a lot of trouble" if he had slept with her.

[¶27] On this record, viewing the evidence in the light most favorable to the verdict, there is ample evidence to support the jury's finding that DesRosiers and the victim were not married when they engaged in the charged sexual acts.[6]

---

[6] At the time of DesRosiers's conduct, a sixteen-year-old could obtain a marriage license only after receiving written consent from his or her parents and the county probate judge. 19-A M.R.S. § 652(8) (2020). Therefore, the victim would have needed consent from her parents and the county probate judge before she and DesRosiers could have received a marriage license. *See id.* Despite DesRosiers's theorizing (on appeal) that they could have eloped to a different state, the victim's testimony that she and DesRosiers had sex the first night they met in person, combined with the legal difficulty of DesRosiers and the victim marrying in Maine, further supports the verdict.

As of June 16, 2020, no marriage license could be issued to an individual under sixteen. P.L. 2019, ch. 535, § 1 (effective June 16, 2020) (codified at 19-A M.R.S. § 652(8) (2020)) (subsequently amended in 2023 to raise to seventeen years the minimum age at which a person can obtain a marriage license).

**3. There was sufficient evidence to establish the age of the victim on the dates of the crimes charged.**

[¶28] DesRosiers argues that there was insufficient evidence to support the jury's conclusion that Counts 1 and 2 occurred on or about May 8, 2020, and that Counts 3 and 4 occurred on or about May 16, 2020, and thus there was insufficient evidence to prove the age of the victim, which is an element of these counts, at the time of the conduct.[7]

[¶29] For the jury to return guilty verdicts on these charged crimes, the State had to prove beyond a reasonable doubt that the victim was fourteen or fifteen years old during the sexual abuse, *see* 17-A M.R.S. § 254(1)(A), (A-2), and under eighteen years old when furnished with liquor, *see* 28-A M.R.S. § 2081(1)(A)(2). The State did not need to prove that the charged conduct happened on any particular date so long as it proved each element of the charged crime. *See State v. Hodgdon*, 2017 ME 122, ¶¶ 11-16, 164 A.3d 959.

[¶30] Both documentary and testimonial evidence admitted at trial established that the victim was fifteen on May 8, 2020, when DesRosiers picked

---

[7] DesRosiers concedes that there was sufficient evidence to establish Count 6, which alleges that on or about May 21, 2020, DesRosiers furnished alcohol to the victim when she was less than eighteen years old. *See* 28-A M.R.S. § 2081(1)(A)(2) (2024). DesRosiers also concedes that there was sufficient evidence as to Count 5, which alleges that on or about May 21, 2020, DesRosiers engaged in a sexual act with the victim when she was fourteen or fifteen years old. *See* 17-A M.R.S. § 254(1)(A), (A-2) (2024).

her up and brought her to his camper for the first time and that on May 25, 2020, four days after the trooper came to DesRosiers's camper, the victim sent messages to DesRosiers referring to herself as a fifteen-year-old. The victim also testified at trial that she had sex with DesRosiers multiple times between May 8, 2020, and May 21, 2020, and that he gave her alcohol almost every time they were together. The victim also testified as to her birthdate, which established that she did not turn sixteen until the fall of 2020. Thus, there was sufficient evidence to establish that the victim was fifteen the first time she and DesRosiers drank together and had sex and that—as conceded by DesRosiers—the victim was fifteen the last time they drank together and had sex on May 21, 2020. It follows that she remained fifteen in the interim, and thus, there was sufficient evidence for the jury to determine the victim's age for the purposes of Counts 1-4.

**B.    Prosecutorial error in the State's closing argument does not warrant a new trial.**

[¶31]   DesRosiers argues that the State committed four prosecutorial errors in its closing argument and that, either separately or cumulatively, they warrant a new trial: (1) improper witness vouching by opining that what DesRosiers told the trooper on May 21, 2020, was fiction while the testimony the jury heard at trial was fact; (2) improperly commenting on the defendant's

18

credibility; (3) impermissibly enlisting the jury to help protect minors; and (4) implying that the jury should use DesRosiers's invocation of his Fourth Amendment rights as evidence of guilt. DesRosiers asserts that these errors deprived him of his right to a fair trial under the federal constitution. *See* U.S. Const. amend. VI; XIV, § 1.[8]

**1. We review DesRosiers's claims for obvious error.**

[¶32] DesRosiers never objected to any of the prosecutor's comments at trial. In *Chapman v. California*, the United States Supreme Court held that an improper prosecutorial comment that violates a defendant's federal constitutional right does not amount to structural error, i.e., where prejudice is presumed and a new trial is automatically required. 386 U.S. 18, 23-26 (1967); *see also Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963) (indicating that not all trial errors implicating the U.S. Constitution are structural); *cf. Neder v. United States*, 527 U.S. 1, 8 (1999) (discussing federal constitutional violations that amount to structural error requiring automatic vacatur).

[¶33] In *Chapman*, the defendant had objected at trial to the comment at issue, and the Supreme Court concluded that the appellate court had to review

---

[8] Although DesRosiers also cites article I, section 6-A of the Maine Constitution to argue that his rights were violated under state law, that argument has been inadequately developed, and so has been waived, and we decline to reach his state law claim. *See State v. Norris*, 2023 ME 60, ¶¶ 32-33, 302 A.3d 1; *State v. Moore*, 2023 ME 18, ¶ 19, 290 A.3d 533.

whether a new trial was warranted applying a harmless error standard of review. *See Chapman*, 386 U.S. at 24; *see also Brown v. Davenport*, 596 U.S. 118, 124 (2022) ("In *Chapman*, this Court held that a *preserved* claim of constitutional error identified on direct appeal does not require reversal of a conviction if the prosecution can establish that the error was harmless beyond a reasonable doubt." (emphasis added)).

[¶34] In the absence of an objection at trial, the plain or obvious error rule applies. *United States v. Olano*, 507 U.S. 725, 732-737 (1993). The Supreme Court has stated that before a court will consider a claim that was not raised at the trial level, there must be error, that error must be plain, and it must seriously affect substantial rights. *Id.* at 732. The last requirement involves an assessment similar to a harmless error standard, but with the burden shifted to the defendant. *See id.* at 734.

[¶35] Finally, when presented with a claim of cumulative error, the Supreme Court vacated a judgment of conviction in a case in which the errors were "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Berger v. United States*, 295 U.S. 78, 89 (1935).[9]

---

[9] The Supreme Court views the standard of review to be applied in this context as governed by federal standards, whether the case resides in federal or state court. *See Chapman v. California*, 386

**2.  The prosecutor did not engage in improper witness vouching, offer improper personal opinions regarding the Defendant's credibility, or improperly enlist the jury to help protect minors.**

[¶36]  With respect to the first three statements that DesRosiers claims constituted prosecutorial error, none constituted error, let alone obvious error.

[¶37]  Witness vouching occurs when prosecutors employ the authority of their position to personally endorse the credibility of a witness. *United States v. Young*, 470 U.S. 1, 8-9 (1985); *United States v. Robinson,* 473 F.3d 387, 396 (1st Cir. 2007).  In contrast, a prosecutor's comment regarding the jury's job to distinguish between fact and fiction does not constitute such vouching but is merely a statement of the jury's role to determine credibility and find facts relevant to determining guilt or innocence.  *See United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("A fundamental premise of our criminal trial system is that the *jury* is the lie detector." (quotation marks omitted.)); *United States v. Gaudin*, 515 U.S. 506, 514-15 (1995) (discussing the jury's role as factfinder and its responsibility to apply the law to the facts found).  Therefore, if, as here, the prosecutor's comment is tied to the evidence, there is nothing wrong with

U.S. 18, 45-46 (1967) (Harlan, J., dissenting); *see generally* Daniel J. Meltzer, *Harmless Error and Constitutional Remedies*, 61 U. Chi. L. Rev. 1 (1994) (noting that under *Chapman*, the federal harmless error standard must be applied by state courts); *People v. Miller*, 113 P.3d 743, 748 (Colo. 2005) (explaining how the Supreme Court does not demand a harmless error review but only plain error review when a claim is unpreserved); *State v. Bond*, 361 P.3d 104, 117-18 (Utah 2015) (same).

saying, "[c]redibility, believability, who's telling the truth, that's important. And we would suggest to you there's nothing *in this record* that you've heard today that [could] make you pause about whether or not [the victim] was being up front or whether or not this trooper was being accurate." (Emphasis added.)

[¶38] The use by a prosecutor of the word "lie" or "liar" is not preferred, *see* Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument*, 51 Me. L. Rev. 241, 267 (1999) ("pejorative language such as 'liar' . . . [is] closely scrutinized"), and an interjection of a personal belief as to whether a witness lied is generally error, *see* M.R. Prof. Conduct 3.4(e); *State v. Williams*, 2012 ME 63, ¶ 46, 52 A.3d 911 (citing *United States v. Perez–Ruiz,* 353 F.3d 1, 9 (1st Cir. 2003) ("A prosecutor improperly vouches for a witness when she . . . impart[s] her personal belief in a witness's veracity or impl[ies] that the jury should credit the prosecution's evidence simply because the government can be trusted.")).

[¶39] Here, however, the prosecutor's comments were not an expression of his personal opinion and did not invoke the prestige of the government. Rather, they were a description of DesRosiers's recorded comments to the trooper on May 21, 2020, when DesRosiers made in quick succession a series

22

of inconsistent and incorrect assertions.[10]   While the prosecutor's choice of

pejorative terminology was inadvisable, we cannot say that, in context, it

crossed the line.

[¶40]  Finally, the prosecutor did not impermissibly enlist the jury to help

protect minors.  The prosecutor said:

> [O]ne of the things we want to emphasize again is that sexual abuse
> of a minor means that in this case [the victim] was 15 and the
> person who was having sex with her was more than ten years older.
> Whether she consented or not is absolutely irrelevant. . . . [T]he
> statute is designed to protect younger people.  And now that you've
> heard the evidence, you can understand why we have such a law,
> given the facts that you've learned, why this defendant is
> prohibited from doing what he did.

DesRosiers was charged under 17-A M.R.S. § 254(1)(A), (A-2), which is titled

"Sexual abuse of minors" and requires proof that the victim was fourteen or

fifteen years old and that the defendant was at least ten years older than the

---

10  The challenged comments were:

- [T]his defendant flat out told a falsehood.  And there's another word for falsehood, and we'll use it maybe just once or twice, but it's based upon the evidence.  He flat out lied to that trooper, and that's based upon the evidence.  It's based upon the evidence that he was a liar at that moment.

- Now, as the evidence in this case progresses, we not only just find out who, we're starting to find out what type of person he is.  We also find out how it came to be that this defendant was able to use the circumstances of this rural area at this time in our lives, the pandemic.  He used the – he used the fact that [the victim] was 15 years old.

- Facts are what you heard from the witness stand.  The fiction is what he told [the] Trooper . . . that night.  One thing after another was fiction.  What you heard in this courtroom was fact.

victim.  The evidence presented at trial indicated that the victim had sex with DesRosiers voluntarily on the dates charged in the indictment.  Directly prior to the challenged portion of the prosecutor's closing, he discussed how the judge would instruct the jury on the appropriate law and then explained how particular testimony related to the applicable statute.  The prosecutor's argument did not appeal to the jury's emotions or enlist the jury to protect minors.  Instead, the prosecutor explained why testimony establishing that the sex was voluntary does not require acquittal, which is an accurate statement of the law.  *See* 17-A M.R.S. § 254(1)(A), (A-2).  A prosecutor may discuss the law and how it relates to the facts presented at trial and argue why the intersection of the two warrants a particular outcome.  *See United States v. Sawyer*, 443 F.2d 712, 713 (D.C. Cir. 1971) ("The prosecutor and the defense counsel in turn must be afforded a full opportunity to advance their competing interpretations, and to emphasize the principles of law that favor their respective positions."); *cf. State v. Lajoie*, 2017 ME 8, ¶ 23, 154 A.3d 132 (the prosecutor's argument as to the purpose of a law was obvious error because it was unsupported by case law, statute, legislative history, or facts in evidence).

24

**3.    The prosecutor erred when commenting on DesRosiers's invocation of his Fourth Amendment right, but the error did not constitute obvious error.**

[¶41]    Under the United States Constitution, prosecutors cannot comment on a defendant's invocation of a constitutional right or encourage the jury to infer guilt from that invocation.[11]  *See Griffin v. California*, 380 U.S. 609, 615 (1965) ("[T]he Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."); *United States v. Thame*, 846 F.2d 200, 206 (3d Cir. 1988) ("We also see little, if any, valid distinction between the privilege against self-incrimination and the privilege against unreasonable searches and seizures which is relevant to the propriety of the prosecutor's argument."); *United States v. Taxe*, 540 F.2d 961, 969 (9th Cir. 1976) (concluding that the "[t]he prosecutor's comments on the Taxes' refusal to consent to a search of their trucks was misconduct" but constituted harmless error).[12]

---

[11]  The invited response doctrine is one exception to the general prohibition on prosecutors' commenting on the invocation of a constitutional right.  *See, e.g., United States v. Robinson*, 485 U.S. 25, 25 (1988).  The doctrine does not, however, allow the prosecutor to argue that the invocation of a constitutional right is evidence of guilt.  *See id.* at 34.

[12]  Not only does comment upon the assertion of a right have constitutional implications, but it is also inappropriate because as an evidentiary matter, such an assertion is rarely probative of guilt.

[¶42]  Here, the prosecutor, in his closing, argued that "when [DesRosiers] was pressed on the matter, he says, well you need a warrant to get in here.  What's the implication of that?"  As conceded by the State at oral argument, this statement was prosecutorial error.  Hence, the question before us is whether it constituted obvious error.  We conclude that it did not.

[¶43]  The prosecutor made an isolated comment while recounting the evidence presented at trial in an otherwise unobjectionable manner.  The jury heard DesRosiers on video deny the trooper consent to search the camper, followed fifty seconds later by DesRosiers telling the victim to leave the camper, then claiming to the trooper that she must have run out a window.  That claim was proven false three minutes later when the trooper entered the camper because he heard DesRosiers yelling at the victim.  The gravamen of

---

As we stated in *State v. Glover*, 2014 ME 49, ¶¶ 11-12, 89 A.3d 1077:

> The probative value of a defendant's exercise of a constitutional right is minimal at best.  There are myriad reasons that a person, whether innocent or not, may exercise a constitutional right.  *See, e.g., United States v. Hale,* 422 U.S. 171, 177[] (1975); *United States v. Prescott,* 581 F.2d 1343, 1350–51 (9th Cir.1978).  This is especially true in the context of the Fourth Amendment right to be free from unreasonable government intrusions.  The Fourth Amendment protects an individual's right 'to be let alone,' which is wholly independent from procedural concerns relating to the ascertainment of truth.  *Schneckloth* [*v. Bustamonte*], 412 U.S. [218,] 242[ (1973)].  Invocation of this right has no legitimate bearing on the likelihood that a defendant is guilty of a criminal offense.").
>
> A defendant's refusal to consent to a search may, in some circumstances, tend to prove a defendant's consciousness of guilt.  However, its minimal probative value will almost always be substantially outweighed by the danger of unfair prejudice, rendering it inadmissible pursuant to M.R. Evid. 403.

DesRosiers's defense was that there was insufficient evidence that he had sex with the victim. The victim testified that they had had sex multiple times, and the events observed by the trooper at the camper supported her testimony along with testimony from DesRosiers's acquaintance that DesRosiers had admitted that he had had sex with the victim. The prosecutor's comment regarding DesRosiers's invocation of his Fourth Amendment right, which DesRosiers made within a flurry of inconsistent statements, while highly inappropriate, did not undermine the integrity of the proceedings, nor did it affect the verdict.[13] This conclusion is further supported by the court's instructions, which limited the potential for the erroneous comment to contribute to the verdict. Before closing arguments, the court instructed the jury that the arguments from counsel "are not evidence, but they should be helpful to you in evaluating the evidence you have seen and heard." In addition, in its standard jury instructions after closing arguments, the court said, "I'm going to talk about what is not evidence and then what is evidence. What is not evidence, as we've discussed a couple of times, opening statements, closing arguments."

---

[13] Although it is our understanding that when the error involves a constitutional right but there was no objection at the trial level, the degree of probability that the record must show as not affecting the verdict is a reasonable probability, *see United States v. Rodriguez*, 735 F.3d 1, 12 (1st Cir. 2013), we conclude that if certainty beyond a reasonable doubt is required, this standard was also met.

The entry is:

Judgment affirmed.

---

Kurt C. Peterson, Esq. (orally), McKee Morgan, LLC, P.A., Augusta, for appellant Trevor I. DesRosiers

R. Christopher Almy, District Attorney, and Mark A. Rucci, Dep. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2022-1923
FOR CLERK REFERENCE ONLY